## W. M. AINSWORTH v. THE STATE.

No. 15656. Delivered January 18, 1933.
Reported in 56 S. W. (2d) 457.

The opinion states the case.

*Thompson & Barber,* of Colorado, Texas, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, five years in the penitentiary.

As bearing on a complaint in bill of exception No. 2, it may be said that sufficient facts are certified as true in the various bills of exception so that we are able to know that deceased had been picking cotton for appellant, and on the night of this homicide the two men went to town together and drank heavily; that they left to go to one Kelley's place about midnight; that Kelley testified that they came to his house about 1 a. m., both drunk; while there deceased cursed and abused appellant and threatened to whip him; that appellant went out to their car; and that deceased then told Kelley he was going to whip hell out of appellant before he got home in the morning; also that appellant testified that about the time they started to Kelley's deceased began to pick a row with him over some cotton picking, caught appellant in the collar, tried to choke him, and told him he was going to whip hell out of him; that he talked deceased out of fighting him; that after this both drank more liquor, and after they left Kelley's appellant said he knew nothing of what occurred except he had a faint remembrance of waking up in a choking, strangling condition. He said he knew nothing more until he was arrested about noon the next day. He further testified that he did not know whether he killed deceased or not. The body of deceased was found on the ground beside appellant's car about 8:30 the next morning something like a mile from the homes of appellant and deceased. Two knife cuts were in the abdomen, and there was a small laceration on one hand of deceased. The seat in the car was upside down, and it was in testimony that appellant had wandered some miles around the country before returning to the car; also that no one saw the killing or knew who did it. The case was submitted on the law of circumstantial evidence.

There is a bill of exception complaining of the rejection of testimony for the defense that a few days before the homicide a witness told deceased that appellant wanted his cotton pickers not to pick cotton until the dew had dried off same, and that, referring to appellant, deceased had said: "He does not know who he is fooling with. I will kill that s— of a b— if he fools with me, and I will pick his cotton any way I please." In this connection we note that appellant excepted to the charge of the court for its failure to submit the law of self-defense. The

above testimony indicates that deceased may have been the aggressor in the fatal difficulty. As shedding light on this proposition, we think the testimony of the threat admissible, and that the court should have given a charge on self-defense. The threat related itself to the picking of cotton, and appellant testified that deceased tried to pick a row with him the night of the homicide over the cotton picking. The state was compelled to look to circumstances to ascertain who did the killing and what caused or actuated the slayer in so doing. Under appropriate instructions the state asked the jury to deduce from the circumstances the guilt of the accused. Had any defensive instruction been given, the jury may have come to a different conclusion, and especially if all the circumstances had been before them.

We are also of opinion that it was error to allow a son of deceased to testify that his mother was left with eight children ranging in ages from 18 to a 6 months old baby, and that they were in poverty and had to pick cotton for a living. Said testimony served no useful purpose, and was certainly calculated to injure the rights of the accused.

Several members of the venire panel, upon examination before the court when the case was called for trial, asked to be excused from service, and, after hearing said requests and the reasons therefor, nine members of the special venire of one hundred and eight men, were excused. We do not discuss this matter, since the case will be reversed for the reasons above set forth; but we call attention of trial courts to the impropriety of excusing special veniremen over objections, unless the reason be one of serious import. If the venire had been exhausted and men put on the jury who were objectionable, it would likely cause a reversal.

For the errors above mentioned, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*