WALTER DOMINGUEZ OROZCO V. STATE

No. 28,877. April 3, 1957.
Appellant's Motion for Rehearing Overruled
(Without Written Opinion) May 15, 1957.

J. P. Moseley and Robert C. Benavides, Dallas, for appellant.

*Henry Wade,* District Attorney, *Thomas B. Thorpe, Frank Watts* and *George P. Blackburn,* Assistants District Attorney, Dallas, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is murder, the punishment, 20 years.

Omitting the formal parts, appellant's confession gives this version of the homicide:

"About six months ago three Mexican boys jumped on my brother, Mauricio, and beat him up about some girl that he was going with. This happened in West Dallas. My brother told me that he would know these men, if he saw them again, but he didn't know their names. Tonight about 10:30 P.M. my brother, Mauricio and I were in the White Kitchen Cafe, 2114 N. Field St., drinking some beer when my brother got up and 'went home and got his gun. When he drove up in front of the White Kitchen I went out to his car and he told me that one of the men who beat him up was sitting at the bar inside the White Kitchen. He pointed the man out to me and I grabbed his gun out of the front seat of my brother's car and went into the cafe. I pointed the pistol at this man and told him to come outside. This man ran over by the music box and I shot at him two times, my pistol jammed and this man knocked the gun out of my hand and it fell on the floor. One of the men that was with the man that I had shot picked up the gun and gave it back to me. I went outside and got my .22 cal. rifle out of the trunk on my car and was going back inside, but this man that I had shot ran off. He went toward McKinney *ave.* After this was over I gave my brother back his pistol and went home. The P. 38 pistol that my brother gave to the Officers is the gun that I shot the man with."

While testifying in his own behalf, the appellant stated that before he fired the first shot the deceased "waved or motioned at me with a bottle of beer * * * like he was going to throw the bottle," and hit him over the head with a stool before he fired the second shot.

The jury rejected the appellant's plea of self defense, and the facts amply support their verdict.

In his brief, appellant advances two grounds for reversal.

He contends that the trial court erred in permitting the deceased's widow to testify as to the number and ages of her children.

We find practically the same evidence admitted without objection from the witness Tony Lopez, who preceded deceased's widow to the stand. Such witness testified that at the time of the homicide the deceased resided with his wife and three children and that shortly before he was killed the deceased had carried a baby's bottle to the house where he had left his wife and children. It was shown by other testimony, without objection, that the deceased was 18 years of age at the time of his death and that his wife was 25.

It has long been the rule that the admission of improper evidence does not constitute reversible error if the same facts were proved by evidence which was not objected to. 4 Texas Juris., Sec. 414, p. 587; Moseley v. State, 158 Texas Cr. Rep. 578, 258 S.W. 2d 331; Texas Dig., Cr. Law 1169(2).

He next complains that the appellant was improperly cross-examined about a prior fine and jail sentence assessed against him in Phoenix, Arizona. On direct examination by his own counsel, the appellant was asked, "Have you ever been convicted of a felony or a misdemeanor or paid a fine or anything of that nature?" He answered in the negative.

In Lampkin v. State, 47 Texas Cr. Rep. 625, 85 S.W. 803; Kemp v. State, 157 Texas Cr. Rep. 158, 247 S.W. 2d 398; and Eloms v. State, 159 Texas Cr. Rep. 471, 264 S.W. 2d 725, this court held adversely to the appellant's contention here asserted. In the last case, we said:

"Prudence favors a showing by the accused that he is eligible under the suspended sentence law, enjoys a good reputation as a law abiding person, and no more. If he goes further and makes blanket statements about exemplary conduct, then the state may refute them."

So, likewise, is the holding of the Supreme Court of the United States in the relatively recent case of Walder v. U. S., 74 S. Ct. 354, 347 U. S. 62, 98 L. ed. 503.

Finding no reversible error, the judgment of the trial court is affirmed.

DAVIDSON, Judge, dissenting.

In the development of its case in chief and after having proven by the autopsy surgeon that deceased was dead as a result of gunshot wounds, the state introduced as a witness the wife of deceased and, over the objection of appellant, proved by her that she and deceased had three children, a boy and two girls, whose names she gave, ranging in age from two years to five months at the time of trial, which would make the youngest child about one month old at the time of the death of her father, the deceased.

It is insisted by appellant that such testimony constituted reversible error.

That appellant's objection was well taken and should have been sustained is directly supported by the cases of Ainsworth v. State, 122 Texas Cr. Rep. 483, 56 S.W. 2d 457; Elizondo v. State, 130 Texas Cr. Rep. 393, 94 S.W. 2d 457; 40 C.J.S., Sec. 225, p. 1146.

It is my opinion that the admission of such testimony over appellant's objection was positive error. My brethren do not appear to hold otherwise, but excuse and hold the error harmless because appellant failed to object to the admission of other testimony of similar import which had theretofore been admitted in evidence without objection.

My understanding of the rule upon which my brethren rely is that, in order to preserve his objection to the introduction of testimony, it is incumbent upon accused to object when proof of the same facts is offered from another source or witness.

This is the first time I ever heard that the rule has been extended to cover proof of facts similar to those to which the objection was urged, as distinguished from proof of the same facts to which the objection was urged. But, be that as it may, the testimony of the witness Tony Lopez, upon which my brethren rely to establish the waiver by appellant, does not show that he waived his right to object to the testimony of the wife of the deceased. The witness did not testify to the same facts to which the appellant objected.

The witness Lopez, the brother-in-law of the deceased, was offered by the state as a witness early in the presentation of its case. Now, here is what he testified as to the alleged error:

"[Q] And I will ask you whether or not he (deceased) was living there with his mother, his wife and family, if you know? A. Right."

The witness further testified:

"[Q] And did he (deceased) leave alone or with someone? A. He took his wife and three children."

This is the testimony—and all of the testimony—of the witness Lopez as to the fact that deceased left surviving children. So then it appears that appellant levelled no objection to proof by that witness that appellant left three surviving children.

The wife of the deceased, by whom the state proved, over appellant's objection, the names and ages of the three surviving children, testified some time after the witness Lopez. Over appellant's objection she was permitted to testify as follows:

"[Q] Did you have any children by Martinez (deceased)? A. Yes, I have three children.

[Q] What is the oldest one's name? A. Raymond.

"[Q] How old is he? A. Two.

"[Q] And the next one? A. Martha, one."

Counsel for appellant again objected to such testimony, and the objection was overruled.

The testimony continued:

"[Q] And the other one, what is the third one? A. And Dolores.

"[Q] And how old is Dolores? A. Five months.

"[Q] What is her birthday? A. April the 28th.

"[Q] Of 1956? A. Yes, sir."

It is this testimony which my brethren hold to be admissible because appellant had not objected thereto prior to the testimony of Lopez that deceased left three surviving children.

Note is taken of the fact that the wife of deceased was permitted to give the names and ages of the children, the youngest of which—according to the dates of birth given—was one month old when her father was killed.

Lopez testified to no such facts; he testified only that three children survived.

In holding that appellant waived his right to object to the inadmissible and highly prejudicial testimony of the wife of deceased, as above set forth, my brethren announce what, to me, is a new and hitherto unheard-of rule of law governing the admission of evidence in the trial of a criminal case. Here is what they hold: The failure of an accused in the trial of a criminal case to object to any evidence when it is first offered by the state constitutes a waiver of his right to thereafter object to the proof of the same or similar evidence by other witnesses.

So then it makes no difference how objectionable or inadmissible evidence may be, unless the accused objects thereto when it is first offered in evidence by the state he cannot thereafter object to the admission of the same or similar evidence from other witnesses, because his failure to object in the first instance constituted a waiver which took from him that right.

The admissibility of evidence turns, first, upon whether the accused has waived his right to object thereto. If he has waived that right, it is immaterial how inadmissible the evidence might be. The fairness of a trial, then, depends not upon right or wrong, but upon waiver by the accused of his rights.

The testimony of the wife of the deceased was inadmissible. It was obviously harmful and calculated to prejudice the rights of appellant before the jury.

Appellant's right to a reversal of this conviction does not depend, alone, upon the above error. Another error is reflected by this record which is equally as harmful and prejudicial as is that discussed, hereinbefore:

Appellant filed an application for a suspended sentence. Upon direct examination he supported that application by testifying that he had never been convicted of a felony or misdemeanor or paid a fine or been in jail "or anything of that nature," and that this was the first trouble he had ever gotten into.

The state made no objection whatsoever to such testimony, especially to that wherein appellant testified that he had never been in jail or paid a fine.

When the state came on to cross-examine appellant, it used the above testimony to authorize and warrant the interrogation of appellant, as follows:

"[Q] Now, you tell this Jury here that you have never been in jail in your life? A. Yes, sir."

"[Q] Is that what you told here to Mr. Moseley? A. Yes.

"[Q] And yet, you also said you were up on Phoenix, Arizona, didn't you? A. Yes.

"[Q] You were up there in April and May of 1944, weren't you? A. Yes, sir.

"[Q] I will ask you if you weren't put in jail up there then for investigation of assault and if you didn't pay a $10 fine and set 10 days in jail?

\* \* \*

"[Q] You did, didn't you? \* \* \* A. I don't remember putting any time in jail.

"[Q] Well, do you recall the fine? A. Well, yes, sir, fine, yes, sir.

"[Q] Well, then, when you told the Jury that you had never even paid a fine, you were wrong then, weren't you? A. Yes.

"[Q] And you could be wrong about the 10 days in jail, too, couldn't you? A. I might.

"[Q] You are not saying you didn't spend 10 days in jail up there, are you? A. I didn't spend 10 days.

"[Q] You deny it? A. I didn't, yes, sir, I deny it.

"[Q] You were up there and got charged with assault, and you say you paid a fine, but you don't remember the 10 days in jail? A. No.

"[Q] Now, you have forgotten that, I suppose? * * * ."

It will be noted that at no time did the state show that appellant had been finally convicted for the alleged assault or for any other offense. The interrogation, then, as to the fact that appellant had been arrested, for investigation, and placed in jail was in direct violation of Art. 732a, Vernon's C.C.P., which requires that in order to impeach an accused or other witness because of accusations brought against him those accusations must have resulted or eventuated in final conviction.

All the inquiry relative to time spent in jail—appellant having denied spending any—was clearly inadmissible. Ward v. State, 160 Texas Cr. Rep. 232, 268 S.W. 2d 465; Rodriquez v. State, 160 Texas Cr. Rep. 453, 272 S.W. 2d 366.

Since the enactment of the suspended sentence law, it has been the consistent holding of this court that the application for suspended sentence simply puts the reputation of one accused of crime in issue and that such reputation is to be proved not by specific acts of misconduct but by competent evidence to show whether the reputation is good or bad. Pettiett v. State, 100 Texas Cr. Rep. 255, 272 S.W. 473; Skelton v. State, 106 Texas Cr. Rep. 90, 291 S.W. 238; Merritt v. State, 124 Texas Cr. Rep. 42, 60 S.W. 2d 792.

The Merritt case appears to be directly controlling here. In that case the accused, on direct examination, testified in support of his application for suspension of sentence that he had never been in trouble before that night, that this was his first offense in his lifetime, and that it was the first time he had ever knowingly done a wrong of that sort. In that case, as here, state's counsel considered that the testimony of the accused that he had never been in trouble before authorized proof of specific acts showing that the accused had been "arrested, confined, and investigated and finger-printed at Chichasha, Okl., and also Fort Worth, San Antonio, Houston, and Bellville." (Merritt v. State).

In holding such testimony inadmissible, reliance was had upon the Pettiett and Skelton cases, supra, and especially that portion of the Skelton case wherein it is said, "* * * as affecting the right of suspended sentence, proof from *either side* must be as to the general reputation of the accused for being a peaceable and law-abiding citizen."

The Merritt case has not been overruled or criticized, but cited with approval in Williams v. State, 130 Texas Cr. Rep. 86, 91 S.W. 2d 709. The holding in the Skelton case was approved as late. as Jackson v. State, 155 Texas Cr. Rep. 466, 236 S.W. 2d 623.

There is no escape, in my opinion, from the conclusion that the cross-examination of appellant, here, as to specific acts of misconduct was not admissible.

Here again, my brethren sanction the receipt in evidence of the testimony solely because appellant, by his testimony, authorized the introduction thereof.

In support of his application for a suspended sentence, appellant testified that he had never before been convicted of a felony in this or any other state. Such testimony was in direct keeping with and in support of the application of the suspended sentence. However, appellant did not stop with that testimony but went further and added that he had never been convicted of a misdemeanor or paid a fine or anything of that nature.

The state could have very easily, properly, and correctly objected to the later testimony (Merritt and Skelton cases, supra), but it elected not to do so and, to the contrary, sat silently by and waived that right. I can ascribe no reasons for the state's failure to object to such testimony other than (a) that it might thereafter impeach appellant upon a trivial and wholly immaterial matter, and (b) that it might get before the jury inadmissible and damaging testimony which it could not otherwise have done.

Whether appellant had ever been convicted of a misdemeanor or paid a fine was not material to the question of the suspended sentence. The truth or falsity of his testimony to that effect would not support or defeat his right to a suspended sentence, for the reason heretofore pointed out in the quotation from the Skelton case.

So the position the state here occupies and which my brethren approve and justify is that by waiving and refusing to exercise its right to object to the admission of inadmissible testimony the state can get before the jury inadmissible and prejudicial testimony but for which refusal to object it could not have done so.

To my mind, that position, as well as the holding supporting it, is palpably wrong for two reasons: (1) It is directly contrary to the prior decisions of this court, and (2) it violates that fundamental fairness that the state should exemplify in the trial of a criminal case.

My brethren cite four cases as supporting their conclusion:

The Lampkin case (47 Texas Cr. Rep. 625, 85 S.W. 803), is not in point because it was written long prior to the existence of a suspended sentence law in this state; it could not possibly supply, therefore, a rule for the admission of evidence upon the question of a suspended sentence. Moreover, the rebuttal evidence in the Lampkin case related to and was held admissible upon the issue for which the accused was there upon trial.

The Kemp case (157 Texas Cr. Rep. 158, 247 S.W. 2d 398) is based upon the holding in the Lampkin case and cites that case as supporting the conclusion there reached. There was no question of suspended sentence, or the proof thereunder, involved there.

The Eloms case (159 Texas Cr. Rep. 471, 264 S.W. 2d 725) cites the Lampkin case and the Kemp case as authority for the holding there. It is sufficient to say that, like the cases cited therein, there was no question of suspended sentence or the requisite proof thereunder involved.

The Walder case (347 U.S. 62, 98 L. Ed. 503, 74 S. Ct. 354) was a conviction for possessing narcotics, in violation of the Federal Narcotics Act. Two narcotic addicts testified that, acting under the direction of federal agents, they obtained the narcotics from the accused. Testifying in his own behalf, the accused denied any dealings with the witnesses and attributed their testimony against him to personal hostility. In connection with his testimony and denial of guilt, the accused also testified that he had never in his life sold, possessed, or handled narcotics.

In rebuttal, the government proved that as a result of an unlawful search of his home some three years previously, a narcotic drug was found therein. The trial court received the evidence only for the purpose of impeaching the credibility of the defendant.

The jury was expressly instructed that its consideration

thereof was limited to that purpose. The testimony was held admissible for impeaching purposes because the defendant, in his testimony, had voluntarily gone beyond a mere denial of guilt and made the sweeping claim that he had never dealt in or possessed narcotics, the offense for which he was on trial at that time.

To my mind, there is not the remotest suggestion that the question there decided has any bearing upon the question presented in the instant case.

The question arose before us, here, in connection with the suspension of sentence. The federal laws do not provide for or entertain suspension of sentence as does our state statute relative thereto.

The voluntary statement on the part of appellant, made when supporting his application for suspended sentence, was that he had never paid a fine or been in jail before. Such voluntary statement was in no manner a denial of guilt of the offense for which he was on trial, which was that of murder. Whether appellant had ever paid a fine or been in jail before was not material to any issue in the murder case.

The proffered statement by the defendant in the Walder v. U.S. case was a denial of having been guilty of the same offense for which he was then on trial. The distinction between the two fact situations is readily apparent:

The voluntary statement of the accused in the Walder case was made in connection with and as a part of the denial of guilt, and therefore was material to the issue for which the accused was on trial. Here, the voluntary statement was not material to any issue arising upon the trial proper.

It has always been the rule that a witness cannot be impeached upon collateral or immaterial matters. Impeachment by contradictory statements must be as to a material matter.

If my brethren want to overturn the settled case law of this state relative to impeachment of the accused as a witness upon immaterial matters under the authority of a decision of the Supreme Court of the United States which has no application here, of course they can do so, but I want no part of it.

The prior decisions of this court are directly in point upon

the proposition above stated, and those decisions are irrefutable. So far as I am concerned, I am going to follow them.

If my brethren are not going to follow the Merritt case they ought to expressly overrule it; if that case is wrong they should point out wherein it is wrong. The Merritt case is directly contrary to the conclusion reached by them in the instant case. Both cannot be correct.

The Merritt case is supported by abundant authority and reasoning. It was the law when the instant case was tried. It ought not to be overruled. It ought to be followed.

In the face of two positive errors committed upon the trial of this case in the admission of prejudicial testimony, with the question of guilt a contested issue and the infliction of punishment of twenty years in the penitentiary, this conviction is affirmed.

To that conclusion I respectfully enter my dissent. The conviction should be reversed and the cause remanded.