Howie Ray ROBINSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 51800.

Court of Criminal Appeals of Texas.

April 20, 1977.

Rehearing Denied May 18, 1977.

Vincent W. Perini and David Loving, Dallas, for appellant.

Henry Wade, Dist. Atty., Gary Love, Winfield Scott, Hugh Lucas and Norman Kinne, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for capital murder. Punishment was assessed at death.

The record reflects that appellant, Ernest Smith,[1] and George Holden met in the Pussycat Lounge in Dallas on September 27, 1973. Holden agreed to drive Smith and appellant to an undisclosed place to gamble. Holden loaned appellant a .22 caliber pistol that someone had pawned to Holden and which Holden kept at the bar.

Under Smith's directions, Holden drove the two men in an automobile he borrowed from his brother's girl friend to a place near Dolphin Road and Alpine Street and was told to wait in the car. Appellant, armed with the .22 caliber pistol, and Smith, armed with another pistol, left the car for approximately fifteen minutes. When the two returned they were running and were carrying a cigar box containing rolled change, paper money, and a .38 caliber pistol and holster.

Holden testified that appellant stated that he had to shoot someone in the head at

---

1. The conviction of Ernest Benjamin Smith, Jr., was affirmed by this Court in *Smith v. State*, Tex.Cr.App., 540 S.W.2d 693.

Schepps' Food Store. Holden related that appellant was still carrying the .22 caliber pistol when he returned to the car.

The trio drove to James Mitchell's house and divided the proceeds of the robbery. Holden further testified that appellant told Mitchell that, " . . . he had shot the man in the head."

William Moon, night manager of Schepps' Food Store at Dolphin Road and Alpine Street, was found shot to death at the store on September 28, 1973. Moon died of a gunshot wound in the head. The .22 caliber pistol belonging to Holden was identified as the murder weapon. Appellant's fingerprints were lifted from a mustard jar on the checkout counter of the store.

Appellant, in a number of his contentions, complains of testimony and arguments of the prosecutor relating to State's witness Holden taking a polygraph examination.

The record reflects that indictments were pending against Holden for robbery and murder growing out of the transaction which forms the basis of this prosecution. Holden's attorney, John Thompson, was called as a witness by the defense and, prior to his testifying, an extensive hearing was had out of the presence of the jury. During the hearing, a number of rulings were made by the court relative to the introduction of testimony about Holden taking the lie detector test. It was developed that a plea bargain had been entered into whereby Holden would testify for the State and the State would in turn recommend probated sentences for Holden in the robbery and murder cases. Additional prerequisites to the agreement were that Holden would take a lie detector test, that he must pass the test, and testify on behalf of the State. The trial court ruled that it was not going to allow the results of the test "in the polygraph examiner's opinion, or what the questions were, or what areas they went into, or what areas they didn't go into, or the answers to any specific questions or even what the specific questions were."

In addition, the court ruled, " . . . when the question is asked what the particularized plea bargain was, if there is an objection to that, I will overrule the objection of the State, and then you will have, in effect, in this Court's opinion, opened up the basis to—in which the plea bargain was arrived at . . . if the issue of having to take a lie detector test is a requisite to receiving the five year probation, I believe the entire conversation will then be opened up."

In addition, the following occurred outside the presence of the jury.

"MR. THOMPSON [Holden's attorney]: . . . I assume that I am permitted to say when I talked with him [Mulder] on that first occasion that they had talked with Mr. Holden; that he had talked to them; and that they had given him a polygraph test. Am I permitted to state that?

"THE COURT: Whatever Mr. Perini understands. He heard your testimony, that whatever the statement was—

"MR. SCOTT [Prosecutor]: The point is, see the polygraph occurred before Mr. Thompson got into it.

"THE COURT: I understand that.

"MR. SCOTT: And Thompson is going to testify that Doug [Mulder] told him he passed the polygraph, and that is going to come out in the Jury's presence, if they open it up.

"THE COURT: And if it is in the same conversation where not only that he had taken a polygraph test and had passed it, and they would like to use him, that is all. That will be part of the conversation that is opened up.

\* \* \* \* \* \*

"THE COURT: If you ask what the plea bargain was in any manner what sources, then I believe it will open up the entire conversation. . . . ."

The record reflects that the following occurred during the testimony of Thompson:

"BY MR. PERINI:

"Q. Mr. Thompson, has there been a plea bargain on those two indictments pending against George Holden that you have testified about?

"A. Yes, there has been.

"Q. Do you anticipate that your client will plead guilty on those offenses and be placed on probation?

"MR. SCOTT: Your Honor, we object to that question.

"THE COURT: Sustained.

"Q. (By Mr. Perini) Has your client, George Holden, been promised that on the two pending indictments against him, he will receive no punishment in excess of probation?

"MR. SCOTT: Unless the Court says that it is opening the door.

"THE COURT: Overruled.

"THE WITNESS: I would say the answer to that would be yes.

"MR. PERINI: Pass the witness.

         *    *    *    *    *    *

"BY MR. SCOTT [Prosecutor]:

"Q. He has been promised that he will not receive in excess of a five-year probation contingent upon three very critical things; is that correct?

"A. That's correct.

         *    *    *    *    *    *

"Q. Now, you have said that there were predicates to this plea bargain that you have testified about. First of all, let me ask you if the plea bargain that you are testifying about—did that occur between yourself and Mr. Doug Mulder who is Mr. Henry Wade's first assistant?

"A. Well, let me state it this way, that I was employed to represent George Holden by the family late October, maybe early November, like the 2nd of November, 1973, and part of this plea bargaining had already occurred before I got on the case, and I talked to Mr. Doug Mulder who is Henry Wade's first assistant District Attorney, probably in early November, and at that time, George Holden had talked with investigators, had talked with Doug Mulder personally about this, and substantial investigation work had been done with regard to what Mr. Hol-

den had told him about this, plus other things, and a part of this plea bargain, as I understand, was that George Holden would be given a polygraph test—

"MR. PERINI: Your Honor, we object to any testimony of that nature and ask you to instruct the Jury to disregard it.

"THE COURT: Overruled.

"MR. PERINI: Would you strike it from the record in order that it be stricken?

"THE COURT: No.

"MR. PERINI: On the grounds previously stated by the Defense, Your Honor.

"THE COURT: I recall the grounds and I overrule them.

"MR. PERINI: The Defense moves for a mistrial.

"THE COURT: Denied.

"THE WITNESS: In other words, one of the things that Mr. Mulder wanted Mr. Holden to do was to take a polygraph test and—

"MR. PERINI: Your Honor, is this witness testifying from his own knowledge or on what basis? Unless it is pinpointed as to time and place, object to hearsay.

"THE COURT: Pinpoint it as to time and place of the conversation.

         *    *    *    *    *    *

"BY MR. SCOTT [Prosecutor]:

"Q. And Mr. Mulder and you—Mr. Mulder advised you that he, Mr. Mulder, had talked to George Holden about the case, had talked to him about the possibility of probation and told him he was going to have to take a polygraph test first? Didn't he tell you that?

"A. That's right.

"Q. And he further told you that Holden was run on a polygraph by Detective Jim Wright, and he told you the results of that test, that he passed the test; didn't he?

"MR. LOVING [Defense counsel]: Objection, Your Honor. That is in violation of prior ruling of the Court.

"THE COURT: Was that a part of the same conversation, Counsel?

"THE WITNESS: That was a part of—that was part of another conversation that I had probably within ten days after that.

"THE COURT: Sustain the objection.

\*   \*   \*   \*   \*   \*

"MR. LOVING: Your Honor, if I may finish my objection, I would ask that the Court instruct the Jury to disregard that answer.

"THE COURT: Disregard.

"MR. LOVING: And the question.

"THE COURT: Disregard the question and the answer to the last question.

"MR. LOVING: And on the grounds previously stated and stated here in open Court, we respectfully request a mistrial.

"THE COURT: Denied.

\*   \*   \*   \*   \*   \*

"BY MR. SCOTT [Prosecutor]:

"Q. Did you have several conversations with Mr. Mulder?

"A. I have had several conversations with Mr. Mulder. I would say that I had three. Now, let me state for the record to be clear on one thing; in the first discussion that I had with Mr. Mulder, which is the one we have been talking about earlier, I want to make it clear *that he did tell me that Mr. Holden had been given a polygraph test and that what he said was that he passed it, and they believed his testimony,* and I want to say that, and—[Emphasis supplied.]

"Q. All right. Okay.

"A. And I had subsequent conversations with him in detail about the polygraph test.

"Q. All right.

\*   \*   \*   \*   \*   \*

"Q. (By Mr. Scott) Did you understand that one of the requisites as to that plea bargain, is that he would come down here and tell the truth?

"A. All right. Let me state for the record that I understand that Mr. Holden was expected to perform, in order to acquire this plea bargain. This is part of the agreement. Number one, he had talked with investigators. He had talked to Mr. Mulder. Number two, he had taken a polygraph; and number three, is that he is going to testify in these trials, if they wanted him to testify, about the facts in this case as he knows them, and tell the truth and not come in and tell some other kind of story.

"I think this is what I had expected. I mean, there wasn't anything that was where I was led to believe that he was just going to get a five-year probated sentence just because he had taken a polygraph test.

"Q. All right. It was based on more than just that?

"A. That's correct."

The record reflects that the prosecutor argued:

"  .   .   .  We were not permitted to show you anything about that, but when they go into the question of plea bargaining, that opens up the conversation about polygraph, about the polygraph—

[Appellant's objection was overruled.]

"MR. LUCAS [Prosecutor]: So it was through that and only through that you were permitted to hear this, otherwise, you would have gone to the Jury room and not known one thing about that. Is that fair to you?"

At another juncture, the prosecutor argued:

"  .   .   .  Why don't we dismiss his case, Mr. Perini says? Because based upon what Mr. Holden has told us, based upon what Mr. Holden has told you,

based upon the plea bargaining that you heard about, one of the agreements was that he was going to tell the truth to us; that he is going to tell it to you and that he was going to pass a polygraph, a lie detector, if you please.

"MR. LOVING: Objection, Your Honor, violates a previous ruling of the Court and it is improper.

"THE COURT: Sustained.

"MR. LOVING: Instruct the Jury to disregard it, please, Your Honor.

"THE COURT: Disregard.

"MR. LOVING: Move for a mistrial.

"THE COURT: Overruled."

■ It has been stated many times that great latitude should be allowed a defendant in showing any fact which would establish bias, motive or ill feeling on the part of any witness for the State. See *Evans v. State*, Tex.Cr.App., 519 S.W.2d 868. This includes examining an accomplice witness who is testifying for the State in regard to any recommendations for probation or promises not to prosecute. See *Burkhalter v. State*, Tex.Cr.App., 493 S.W.2d 214; *Stephens v. State*, Tex.Cr.App., 522 S.W.2d 924.

■ Holden was a vital witness for the State. There were no eyewitnesses to the crime and it was through Holden's testimony that appellant was implicated with the actual shooting of the deceased. Clearly, appellant had the right to ask Holden's attorney if his client had been promised on the two indictments pending against him "he will receive no punishment in excess of probation." The question then becomes if such inquiry opens up the plea bargain agreement relative to taking a polygraph test and passing the test. While the court ruled that the polygraph operator's opinion could not be introduced into evidence, the court further ruled that Thompson's first conversation with Mulder relative to Holden taking the test and having passed the test was admissible if appellant made inquiry about any plea bargain in behalf of Holden.

A review of the testimony and argument heretofore set out reflects that the matter of Holden having taken a polygraph and passed it is before the jury by express testimony as well as by implication.

■ We reject the State's argument that appellant failed to preserve his objection to the evidence because he failed to object each time Thompson mentioned the polygraph examination. The court had ruled at the hearing out of the presence of the jury that the first conversation Thompson had with Mulder would be admissible if appellant made inquiry about plea bargaining on behalf of Holden. Art. 40.09, Sec. 6(d)(3), V.A.C.C.P., provides that when the court rules testimony admissible outside the presence of the jury it is not necessary for the defendant to object in the presence of the jury when such testimony is offered. Further, the failure of appellant to object every time the same witness mentioned polygraph was not necessary to preserve error.

■ It has been the consistent holding of this Court that evidence of the results of a lie detector or polygraph is not admissible on behalf of either the State or the defendant. *Lewis v. State*, Tex.Cr.App., 500 S.W.2d 167. In *King v. State*, Tex.Cr.App., 511 S.W.2d 32, this Court said, ". . . It is now well established that evidence regarding polygraph examinations is inadmissible for all purposes."

The instant case does not fall within the ambit of *Lucas v. State*, Tex.Cr.App., 479 S.W.2d 314, cited by the State, where the defendant testified on direct examination that he had been administered a polygraph test and the test exculpated his guilt. This Court held that the defendant had "opened the door" and the State could then introduce evidence that the defendant did not pass the polygraph test. The instant case, likewise, does not come within our holding in the recent case of *Leach v. State*, Tex.Cr.App., 548 S.W.2d 383 (1977), where the defendant testified on direct that he was telling the gospel truth, "I will take a lie detector test on it, or whatever." This Court held it was permissible for the State to then ask the defendant, "Why didn't you ask for a polygraph examination?" Nor is

this case similar to *Rodriguez v. State*, 170 Tex.Cr.R. 295, 340 S.W.2d 61, where it was held that when the accused voluntarily testifies that he offered to take such a test the State may show that he was offered the test but declined to take it.

The State argues that the testimony relative to taking the polygraph test was admissible under Art. 38.24, V.A.C.C.P.,[2] because appellant "opened the door" concerning the plea bargaining arrangement and the State had a right to introduce evidence of the polygraph examination to prevent the false impression on the jury that the State would rely on a convicted felon's unverified version of a murder-robbery in exchange for a probated sentence. The State relies on *Roman v. State*, Tex.Cr.App., 503 S.W.2d 252, where this Court stated that the purpose of 38.24, supra, was "to reduce the possibility of the factfinder receiving a false impression from hearing the evidence of only a part of the conversation, writing, act or declaration."

In *Romero v. State*, Tex.Cr.App., 493 S.W.2d 206, the defendant urged on appeal that the trial court erred in admitting into evidence, over objection, the results of a lie detector or polygraph test. The State responded that the same was admissible by virtue of a pretrial written agreement and stipulation entered into between the defendant and the State prior to the test.

In *Romero, Pulakis v. State*, 476 P.2d 474 (Alaska Sup.Ct.1970), was quoted, where it was stated:

"On the basis of our study of the judicial authority and academic literature in this area, we conclude that the results of polygraph examinations should not be received in evidence over objection. Even if no objection had been tendered, the trial court ordinarily should reject such evidence. A stipulation for admission does not increase the reliability of poly-

graph results and therefore should not lead to any derivation from the exclusionary policy."

In *Romero*, this Court concluded:

"In the instant case, we conclude as did the Alaska Supreme Court in *Pulakis* that, based on our study, the results of polygraph tests should not be received into evidence, over objection, even if there had been a prior agreement or stipulation. Such stipulation does nothing to enhance the reliability of such evidence when offered by either side on the issue of the guilt or innocence of the accused."

This Court further noted in *Romero* that the rationale underlying the exclusion of stipulated polygraph results is "that it is inconsistent for a court to affirm the unreliability of lie detector tests and at the same time admit into evidence the results of a stipulated test." See *Lewis v. State*, supra.

The fact that Holden had agreed with the State in a plea bargain agreement to take a polygraph test did nothing to increase the reliability of such test. To apply Art. 38.24, supra, and hold that the testimony relative to Holden taking the lie detector test became admissible in order that the jury might not receive a false impression would be in effect using a test which in the "almost unanimous view of American courts" has been deemed unreliable to dispel a false impression. See *Romero v. State*, supra. This we decline to do. Further, we decline to accept the State's theory that a false impression was created by the appellant's question to Holden's attorney as to whether Holden had been promised "he will receive no punishment in excess of probation" for testifying.

With the testimony of Holden having taken and passed a polygraph examination before them, the jury would necessarily conclude that Holden's testimony about appellant having told him that he shot a man

---

**2.** Article 38.24, supra, states that:

"When part of an act, declaration or conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other, as when a letter is read, all letters on the same subject

between the same parties may be given. When a detailed act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to make it fully understood or to explain the same may also be given in evidence."

in the robbery was true.[3] It would be unrealistic to not conclude that the unverified testimony of Holden, a convicted felon, was bolstered immeasurably by testimony that he had taken and passed a lie detector test. In *Nichols v. State*, Tex.Cr.App., 378 S.W.2d 335, it was noted that the asking of a prosecutrix in a rape case if she had taken a lie detector test and an affirmative answer thereto in effect revealed the results and bolstered the prosecutrix' testimony before the jury.

We find the admission of the testimony relative to the witness Holden having taken a lie detector test to be error, that same was harmful and prejudicial to appellant, and requires reversal of this case.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.

DOUGLAS, Judge, dissenting.

The plea bargaining agreement was first brought out by the defense and the State then proved the entire agreement.

Even if the testimony about the result of the polygraph examination to show Holden's full plea bargaining agreement should not have been admitted, the same testimony which was originally objected to was admitted without objection and leaves nothing for review. "It has long been the rule that the admission of improper evidence does not constitute reversible error if the same facts were proved by evidence which was not objected to." *Orozco v. State*, 164 Tex. Cr.R. 630, 301 S.W.2d 634 (1957). See 5 Tex.Jur.2d, Sections 444–447, pages 699 et seq. The rules do not change because a severe penalty has been assessed.

The judgment should be affirmed.

---

3. In a hearing outside the presence of the jury, Jim Wright, the polygraph operator who administered the test to Holden, testified that he did not ask Holden about appellant having told him that he shot a man in the robbery and whether appellant left the car with a .22 caliber pistol and returned with the same. The court refused appellant's request to allow this testimony to go to the jury.