**Dennis D. WHEELER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–96–382 CR.**

Court of Appeals of Texas, Beaumont.

Submitted Oct. 1, 1998.

Decided March 10, 1999.

Rehearing Overruled April 29, 1999.

23. *See Davis,* 782 S.W.2d at 215.

Douglas M. Barlow, Beaumont, for appellant.

Lisa M. Tanner, Dist. Atty. Pro Tem, Asst. Atty. Gen., Austin, for state.

Before WALKER, C.J., BURGESS, and STOVER, JJ.

## OPINION

PER CURIAM.

A jury convicted Dennis Wheeler of aggravated sexual assault and the trial court assessed punishment at life in the Institutional Division of the Texas Department of Criminal Justice.[1] Wheeler presents five issues for consideration. Our discussion of his first issue will be dispositive of the appeal.

Issue one contends, "Reversible error occurred when the trial court admitted evidence of an extraneous offense." The record reflects that Wheeler called Wanda Brumley as a witness in his case-in-chief. Brumley was a case worker for Child Protective Services (CPS) located in Kountze, Texas. On direct examination, Brumley testified that in the course of her work as a CPS case worker, she was made aware of the allegation by S.E., the nine year old victim, against Wheeler. As standard procedure for CPS, Brumley was assigned to investigate Wheeler's home to assess the risk that Wheeler would be a threat to his own children. Brumley testified that as a result of her investigation she "did not find any risk of abuse or neglect in the home." That was the extent of Brumley's direct examination testimony.

On cross-examination, the State initially inquired about the scope of Brumley's investigation. Brumley stated that she spoke with both of Wheeler's children out of Wheeler's presence, spoke with a Rachel Sungren, spoke to Wheeler's daughter's counselor and teachers at her school, and finally spoke to Wheeler and his wife. The State then inquired whether Brumley had asked Wheeler if the allegations of S.E. against him were true. Brumley replied, "He denied it. He stated no." The State then pressed Brumley for Wheeler's "exact words." The State then showed Brumley a copy of her report and then read to Brumley the following portion: "He states that he loves both of his children very much and would never hurt them or anyone else." Brumley acknowledged that that was what Wheeler told her. The State continued to read from Brumley's report: "Mr. Wheeler stated that he is innocent and would never think of harming a child or any human being." At this point, trial counsel for Wheeler asked to approach the bench.

Wheeler's trial counsel objected that the State was attempting to "open the door" to permit the State to be able to later rebut with extraneous offense evidence. The State then requested a hearing outside the jury's

---

1. A third young victim testified at the punishment hearing to additional egregious acts of aggravated sexual assault.

presence. Out of the jury's presence, the State further questioned Brumley as follows:

Q.[State] Sure. Okay. Now, you received information, did you not, about an allegation of another child against the defendant, specifically his niece, did you not?

A. Yes, I heard about that.

Q. And did you make any attempt to contact that individual and talk to them about their allegation?

A. I was unable to contact that niece, but someone had told me about that. And I did not talk with her.

Q. What efforts did you make to contact that young lady?

A. I don't recall. I don't know if it was a telephone call or I had spoke with Ms. Wheeler or not. I did not talk with her.

Q. So, you called only Ms. Wheeler with regard to that particular individual?

A. Yes, I talked to her about it.

Q. And what did Ms. Wheeler tell you about it?

A. I don't recall.

Q. Ms. Brumley, let me ask you this. If you had— just assume with me hypothetically in this particular case you had talked to a young lady who was a niece of the defendant and she indicated to you that he had molested her some eight years ago, do you think that might have changed your opinion that there was no risk to [Wheeler's daughter] in any way?

A. Possibly.

The State halted questioning Brumley and proceeded to argue to the trial court that the case of *Creekmore v. State*, 860 S.W.2d 880 (Tex.App.—San Antonio 1993, pet. ref'd), permitted the State to elicit from Brumley the specific denials of Wheeler regarding S.E.'s allegations, and *then* to further elicit from Brumley the details of the allegations regarding Wheeler's niece. Wheeler's trial counsel strenuously objected to the State's characterization of *Creekmore* as fitting the way trial counsel conducted his direct examination of Brumley so as to allegedly "open the door" to the State's ultimate attempt to

introduce an extraneous offense before the jury. The trial court initially overruled Wheeler's objection. Trial counsel then raised an objection under TEX.R. EVID. 403 [2] stating:

> To allow the defendant— to allow the State by this method to get into extraneous offenses is so terribly prejudicial and unfair that we again urge that the court not allow this testimony to form— to be used to form the basis of him putting on other evidence on rebuttal.

> I've been extremely careful, Your Honor, about this very point. That's the reason that was put in the motion in limine. That's the reason that we have specifically questioned witnesses only about specifics events. That's the reason that I did not ask Ms. Wheeler have there been other children over there and has he ever misbehaved or anything like that that is quite familiar with the rule in this context as to opening the door. But for them to come in cross-examination and kick the door open in that method, I think it is completely improper.

The trial court again overruled Wheeler's objections. The jury returned to the courtroom and Brumley was permitted to testify to the existence of a similar allegation of sexual assault by Wheeler on his niece several years before. Several more witnesses for the defense followed Brumley, including Wheeler himself. Following Wheeler's testimony, the defense rested, and court was recessed for the day.

The next day, prior to the start of the State's case in rebuttal, Wheeler's trial counsel requested to take up matters out of the jury's presence. Trial counsel initially pointed out to the trial court that, concerning the previous day's extraneous offense issue, the more significant portion of *Creekmore* was contained in an opinion on rehearing. After reciting a portion of *Creekmore*, trial counsel then stated the following:

> There was and has been no such testimony presented by the defendant in this

**2.** Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

case. There has been no question asked of the defendant or of any witness for the defendant that would constitute the direct defense testimony that is referred to in the *Creekmore* case. So, I respectfully submit that any testimony that would be offered as rebuttal testimony dealing with an alleged incident in 1988 would constitute extraneous matters and matters to which the door had not been opened by the defendant. And I respectfully, again, submit to the court that the *Creekmore* case, therefore, is not authority for allowing the testimony in this case.

The State's reply was that Wheeler was essentially making the same argument as he made the previous day and the trial court's ruling of the day before should stand based again solely on *Creekmore*. The trial court responded by stating that its ruling would stand. Thereafter, the State called Wheeler's fifteen year old niece, S.S., to testify to an incident that occurred when S.S. was six years old. While on a family outing to the lake, Wheeler placed his hand underneath the bathing suit of S.S. and touched her "female organ." S.S. stated that she pulled his hand out from her bathing suit bottom and swam away. S.S. further testified that a week or "months" later, she told her mother. No charges were filed, however, because they did not want to "break up the family."

 Although not raised by the State in its reply to issue one, we initially take up the question of Wheeler's preservation of error on issue one as to the testimony of S.S. as preservation of error is a systemic requirement that an appellate court may ordinarily review on its own motion. *See Jones v. State*, 942 S.W.2d 1, 2 n. 1 (Tex.Crim.App. 1997). Under former TEX.R.APP. P. 52(b), when the trial court hears objections to offered evidence out of the presence of the jury and rules that such evidence be admitted, such objections shall be deemed to apply to such evidence when it is admitted before the jury without the necessity of repeating those objections. We fully realize that the instant case would normally be governed by the recently amended rules of appellate procedure that took effect on September 1, 1997. However, under the order of Court of Criminal Appeals, which precedes the amended

rules, the rules govern all proceedings then pending "except to the extent that in the opinion of the court their application in a particular proceeding then pending would not be feasible or would work injustice, in which case the former procedure may be followed." In the instant case, we feel that such an injustice would work against Wheeler because the amended rule dealing with preservation of appellate complaints, Rule 33.1(a), does not contain language similar to that contained in former Rule 52(b) quoted above. For appellate review purposes, we find that trial counsel's re-urging of his previous day's objection, out of the jury's presence, to the rebuttal testimony of S.S. complied with former Rule 52(b) and did not waive preservation of error as to issue one. We now take up the propriety of the trial court's having permitted Ms. Brumley's testimony as to the extraneous offense involving S.S. as well as to the propriety of permitting the testimony of S.S. herself.

 The general rule is that if an accused creates what is purported to be a false impression about his nature as a law abiding citizen or his propensity for committing criminal acts, he has opened the door for his opponent to present rebuttal evidence. *Delk v. State*, 855 S.W.2d 700, 704 (Tex.Crim.App. 1993). Nevertheless, a trial court must proceed cautiously when encountering the situation and subsequently permitting the State to proceed with rebuttal evidence. The trial court must be assured of two things before granting the State permission to continue. The first is that the accused indeed opened the door, and second, that the door was opened far enough to allow the State to use the evidence it intends to use. *Rodriguez v. State*, 974 S.W.2d 364, 368 (Tex.App.—Amarillo 1998, pet. ref'd). As to the former, it is clear that only the accused has the authority to open the door; the State cannot do so via its examination of a witness or the defendant. *Hammett v. State*, 713 S.W.2d 102, 105 n. 4 (Tex.Crim.App.1986); *Shipman v. State*, 604 S.W.2d 182, 184–85 (Tex.Crim.App.1980). As to the latter, it is similarly clear that while the door may be opened, it is not necessarily opened for everything to pass through. In effect, the rebuttal evidence cannot exceed

the scope of 1) the question posed by appellant, and 2) the answer given to it. *Delk,* 855 S.W.2d at 703–05; *Hammett,* 713 S.W.2d at 105–07. Furthermore, the "open the door" exception to the general rule of inadmissibility of extraneous offenses or bad acts is not broadly construed. Rather, it is generally limited to those instances in which a witness makes assertions about his past which are either patently untrue, or clearly misleading. *See Orozco v. State,* 164 Tex.Crim. 630, 301 S.W.2d 634 (1957); *Lewis v. State,* 933 S.W.2d 172, 179 (Tex.App.—Corpus Christi 1996, pet. ref'd).

■■■ In the instant case, the initial damage was done by Brumley's being permitted to testify as to her knowledge of the existence of a similar accusation against Wheeler by his niece, S.S. Can we say that Brumley's direct examination testimony that she found no need to remove Wheeler's children from their home created a *false* impression about Wheeler's nature as a law abiding citizen or his propensity for committing criminal acts? In keeping with the narrow construction given by our case law to the "false impression" exception, Brumley's direct examination testimony did not open the door. *See Lopez v. State,* 990 S.W.2d 770, 777 (Tex.App.—Austin, 1999, no pet. h.); *Lewis,* 933 S.W.2d at 179. Even if it could be said that Wheeler did open the door somewhat by his direct examination of Brumley, the scope of the State's rebuttal evidence, the similar act perpetrated upon S.S., clearly exceeded the scope of Brumley's "false impression" testimony.

■■■ In its brief, the State contends that the rebuttal testimony of Brumley and S.S. was admissible under TEX.R. EVID. 404(b) to rebut several different defensive theories and strategies.[3] We have examined the three "theories and strategies" discussed in the State's brief and find that any probative value to the State of the extraneous offense testimony was substantially outweighed by the obvious prejudicial effect such evidence would have on Wheeler under the circumstances then existing in the guilt/innocence phase of the trial. In determining whether the prejudicial effect of evidence substantially outweighs its probative value, several factors should be considered:

(1) How compellingly evidence of the extraneous misconduct serves to make more or less probable a fact of consequence,

(2) The potential the "other crime, wrong, or act" has to impress the jury in some irrational but indelible way,

(3) How much trial time does the proponent need to develop evidence of the extraneous misconduct, and

(4) How great is the proponent's need for the extraneous transaction.

*Lane v. State,* 933 S.W.2d 504, 520 (Tex. Crim.App.1996). In the instant case, we are not troubled by number three, the time factor, as the State needed little time in presenting the extraneous offense evidence to the jury. As for the first factor, it is difficult to say that the evidence of the incident involving S.S. was "compellingly" relevant. After all, the State introduced, apparently under the provisions of TEX.CODE CRIM. PROC. ANN. art. 38.37 (Vernon Supp.1999), the allegation by S.E. that Wheeler had previously touched her vaginal area underneath her basketball uniform approximately one month prior to the instant offense.[4] This prior incident, and its emotional impact on S.E., was fully developed by the State during the testimony of S.E., as well as during her mother's testimony. Under the particular evidentiary circumstances of the instant case we can say

---

3. TEX.R.CRIM. EVID. 404(b) is now TEX.R. EVID 404(b) under the unified Texas Rules of Evidence promulgated by the Texas Supreme Court and the Court of Criminal Appeals, effective March 1, 1998. The rules are identical.

4. Although Wheeler made no complaint at trial or on appeal, it appears that evidence ostensibly admissible as relevant under article 38.37 may, nevertheless, be subject to suppression based upon Rule 403. *See Poole v. State,* 974 S.W.2d 892, 897 (Tex.App.—Austin 1998, no pet.); *Hinds v. State,* 970 S.W.2d 33, 35 (Tex.App.—Dallas 1998, no pet.); *Howland v. State,* 966 S.W.2d 98, 103 (Tex.App.—Houston [1st Dist.] 1998, pet. granted). This is notwithstanding section 4 of article 38.37 which provides: "This article does not limit the admissibility of evidence of extraneous crimes, wrongs, or acts under any other applicable law."

that the evidence of the incident involving S.S. was only moderately relevant.

In analyzing the second factor, we are initially faced with the candid observation that evidence of an extremely similar extraneous offense always carries the potential to impress the jury with an accused's character conformity, an impression the law seeks to avoid. *See Lane*, 933 S.W.2d at 520. Although a limiting paragraph was provided to the jury in the trial court's instructions, such instructions could have little efficacy, because, as we have already discussed, the State far exceeded the scope of appropriate evidence to rebut Wheeler's alleged "false impression" evidence. That Wheeler perpetrated an almost identical act of sexual abuse upon his six year old niece cannot honestly be seen as anything but proof of character conformity, i.e., that Wheeler is a sexual predator of little girls.

Finally, the State's expressed need for the extraneous evidence in question, to rebut Wheeler's false impression evidence, has already been discussed. It would have been a simple matter to discredit Brumley's conclusion that Wheeler's children did not need to be removed from the home by attempting to develop the fact that her investigation was somewhat cursory at best. At any rate, we need not speculate as to how the State could have gone about rebutting the very modest opening, if opening there be, of the door by Brumley's testimony on direct examination. We find, therefore, that the trial court abused its discretion in permitting the extraneous offense evidence to be elicited by the State before the jury.

 Tex.R.App. P. 44.2(b) is the rule on "harm" analysis for non-constitutional error. As the comments under Rule 44.2 observe, 44.2(b) is taken from Rule 52(a) of the Federal Rules of Criminal Procedure. Under either rule, an appellate court must disregard any error, defect, irregularity, or variance that does not affect substantial rights. While this standard is less severe than the "beyond a reasonable doubt" rule that now applies only to constitutional error, it is still unclear how a reviewing court applies Rule 44.2(b). As related to the present issue under consideration, we initially note that the

substantial right affected by the admission of an extraneous offense is the right to a fair trial. *See Garza v. State*, 963 S.W.2d 926, 931 (Tex.App.—San Antonio 1998, no pet.); U.S. Const. amends. V & VII; Tex. Const. art. I, § 10. An accused must be tried only for the offense with which he is charged. He may not be tried for a collateral crime or for being a criminal generally. *Stafford v. State*, 813 S.W.2d 503, 506 (Tex.Crim.App.1991); Tex.R. Evid. 404(b).

In *Rodriguez v. State*, the sequence of events that took place during the trial were strikingly similar to those of the instant case. The *Rodriguez* Court found trial court error in permitting the State to elicit extraneous offense evidence from a defense witness based upon the State's claim that the defendant had opened the door on direct examination. After conducting a "harm" review under Rule 44.2(b), the *Rodriguez* Court concluded that the error was "harmless." *Rodriguez*, 974 S.W.2d at 369–70. However, significant factual differences existed in *Rodriguez* when compared to those in the instant case. First, although Rodriguez was being tried for sexual assault on a fourteen year old female victim, the extraneous offense evidence consisted of an arrest and charge for aggravated assault, two prior DWI convictions, and an arrest and charge for felony criminal mischief. *Id.* at 367–68. These crimes were completely dissimilar to the sexual assault Rodriguez was on trial for.

The Amarillo Court next noted in its Rule 44.2(b) analysis that "before the prosecutor delved into [the collateral crimes, the prosecutor], sought guidance from the court. In other words, [the prosecutor's] acts were not unilateral which, in turn, indicates that the State did not seek to improperly taint the jury." *Id.* at 370. In the instant case, had Wheeler's trial counsel not anticipated where the State was heading by having Brumley recite Wheeler's explicit denials, the State would have undoubtedly launched right into the extraneous offense evidence involving S.S.

Along similar lines, the Amarillo Court pointed out that after the extraneous offense evidence was initially testified to, no further mention was made of it during the guilt/inno-

cence phase of the trial. *Id.* In the instant case, however, the State revisited the incident involving S.S. extensively in both portions of its final arguments to the jury. And finally, although the quantity of evidence to support Wheeler's guilt is also a factor in a Rule 44.2(b) analysis, it is not the sole factor. *Garza,* 963 S.W.2d at 930 (citing *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App. 1989)). Under the record before us, however, we find that Wheeler's substantial rights were affected by the error in that his rights to a fair trial at the guilt/innocence phase were prejudiced. *See Ex parte Fierro,* 934 S.W.2d 370, 377 n. 14 (Tex.Crim.App.1996). We therefore sustain Wheeler's first issue, reverse the judgment of the trial court, and remand the cause for further proceedings consistent with this opinion. We do not reach the remainder of Wheeler's appellate issues.

REVERSED AND REMANDED.