New Page 1




COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT
WORTH


NO.
2-04-203-CR


MIGUEL ANGEL
ORTIZ                                                           APPELLANT

V.

THE STATE OF
TEXAS                                                                  STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION [1]

------------
INTRODUCTION
        In
a single point, Appellant Miguel Ortiz argues that the disclosure to the jury of
the results of a codefendant’s polygraph test at the punishment phase of his
murder trial was reversible error. We affirm.
 
PROCEDURAL
AND FACTUAL BACKGROUND
        Ortiz
and codefendant Craig Alford entered a drug house to confront Larry Holmes about
shorting Alford on drug purchases. An eyewitness, Waymon Akins, testified that
Ortiz pulled a gun and shot Holmes in the back of the head. Ortiz then turned
and shot Holmes’s brother, Robert Holmes, who fell to the floor and played
dead. Akins ran for his life and escaped from the house through a bedroom
window. Akins reported the murder to the police, who soon apprehended Ortiz.
Alford turned himself in.
        The
State indicted Ortiz for capital murder and murder. As part of a plea bargain,
Ortiz pleaded guilty to the murder count, and the State waived the capital
murder count. The punishment phase was tried to a jury. The jury assessed
punishment at confinement for life.
        At
trial, Ortiz took the stand and testified that Alford gave him the gun and
ordered him to shoot Holmes, and that he followed the order because he feared
Alford. On cross-examination, the following exchange took place between Ortiz
and the prosecutor:
Q.And Craig
Alford -- and you know this -- turned himself in to the police, didn’t he?
 
        A.     Several
weeks later, yes.
 
        Q.     How
about a few days later, Mr. Ortiz?
        A.     I
don’t know exactly what day. But I found out he’s hiding, turned himself in
because I guess he felt he can, which he did -- make a plea bargain with you.
You set free a killer –
 
        Q.     After
he passed a polygraph, Mr. Ortiz.

Ortiz
immediately objected and requested the trial court to instruct the jury to
disregard the prosecutor’s statement. The trial court sustained the objection
and instructed the jury to disregard the statement. Ortiz then moved for a
mistrial, which the trial court denied. Ortiz moved for a mistrial again at the
conclusion of evidence; again, the trial court denied his motion.
DISCUSSION
        The
existence and results of a polygraph examination are inadmissible for all
purposes. Tennard v. State, 802 S.W.2d 678, 683 (Tex. Crim. App. 1990).
When, in the course of a trial, reference is made to polygraph tests, the
appellate court’s analysis initially focuses on whether the results were
revealed to the jury. Id. at 683-84. When the existence but not the
result of a polygraph test is revealed to the jury, an instruction to disregard
is sufficient. Id. But when the result of the polygraph is revealed to
the jury, an instruction to disregard is insufficient, and we must conduct a
harm analysis to determine whether the error requires reversal. Id. at
684.
        In
this case, the State concedes that it revealed the results of Alford’s
polygraph test to the jury and that the trial court’s instruction to disregard
was insufficient to cure the error. Our review, therefore, is limited to whether
the error was harmful.
        If the error is constitutional, we apply rule 44.2(a)
and reverse unless we determine beyond a reasonable doubt that the error did not
contribute to the appellant’s conviction or punishment. Tex. R. App. P. 44.2(a). Otherwise, we
apply rule 44.2(b) and disregard the error if it does not affect the appellant’s
substantial rights. Tex. R. App. P.
44.2(b); see Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998)
(op. on reh’g), cert. denied, 526 U.S. 1070 (1999); Coggeshall v.
State, 961 S.W.2d 639, 642-43 (Tex. App.—Fort Worth 1998, pet. ref’d).
        The
disclosure of polygraph results does not directly offend the United States
Constitution or the Texas Constitution and therefore is not constitutional
error. See Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App.
1998) (holding that the trial court’s error in admitting hearsay evidence was
not constitutional error); King v. State, 953 S.W.2d 266, 271 (Tex. Crim.
App. 1997) (holding that improperly admitted evidence was not constitutional
error). Because we determine that the error is not constitutional, rule 44.2(b)
is applicable. Tex. R. App. P.
44.2(b). Therefore, we are to disregard the error unless it the affected
appellant’s substantial rights. Id. A substantial right is affected
when the error had a substantial and injurious effect or influence in
determining the jury’s verdict. King, 953 S.W.2d at 271 (citing Kotteakos
v. United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall,
961 S.W.2d at 643. In making this determination, we review the record as a
whole. See Johnson, 967 S.W.2d at 417.
        In
Tennard, a murder suspect (Stewart) made statements to a police officer
that led to Tennard’s arrest and indictment for the murder. Tennard, 802
S.W2d at 682. Both Stewart and the police officer testified at Tennard’s
trial. Id. When Tennard’s counsel cross-examined the police officer and
attempted to discredit his testimony regarding Stewart’s veracity, the
following exchange took place:
Q.But at any
rate, you believed Fred Stewart, with all of his offenses and all of the other
involvement you had concerning Fred Stewart?
 
A.Plus I gave
him a polygraph test, which confirmed his story, which he passed.

Id. at
683. In conducting its harm analysis, the court of criminal appeals noted that
Stewart was not the State’s sole witness or even a crucial witness, and that
Stewart’s testimony was corroborated by other witnesses. Id. The court
distinguished the facts of Tennard from two earlier cases—Nichols
v. State, 378 S.W.2d 335 (Tex. Crim. App. 1964), and Robinson v. State,
550 S.W.2d 54 (Tex. Crim. App. 1977)—in which polygraph evidence bolstered the
testimony of the State’s key witnesses. Tennard, 802 S.W.2d at 684. The
court concluded that the error was harmless. Id.
        In
this case, the prosecutor’s remark about Alford’s polygraph result tended,
at most, to indirectly impeach Ortiz’s testimony by bolstering the version of
the murder Alford told to the police. Like Stewart in Tennard, Alford was
not the State’s sole witness or even a crucial witness; indeed, he was not
called as a witness at all. This fact makes our case even less like Nichols and
Stewart than Tennard.
        Moreover,
Ortiz’s testimony was directly impeached by other evidence at trial. When
Ortiz was arrested for the murder, he wrote a confession claiming sole
responsibility for the crime and exculpating Alford. [2] When the
State cross-examined Ortiz, it established that Ortiz could have exited the car
on the way to kill Holmes but did not do so; that Ortiz could have fled the
scene when Alford entered the drug house ahead of him but did not do so; that
Ortiz could have recruited the Holmes brothers to subdue Alford inside the drug
house but did not do so; and that Ortiz had possession and control of the only
gun in sight before and during the murder. The State also produced evidence that
Ortiz had been dealing and using drugs since he was in the ninth grade; that he
had been convicted of attempted burglary, attempted criminal tampering, and bail
jumping in New York; and that he had been released on parole three times and
violated his parole three times. And underlying all of this evidence was Ortiz’s
ready admission to the jury that he pulled the trigger in what the medical
examiner testified was an execution-style killing. [3]
        Finally,
the context in which the prosecutor disclosed the polygraph evidence is
significant. The prosecutor stated that Alford passed a polygraph test after
Ortiz accused her of having “set free a killer.” Ortiz had already pleaded
guilty to the murder and testified that he himself was the literal killer. To
the extent that the polygraph evidence tended to impeach Ortiz by indicating the
basis for the prosecutor’s belief that Alford was not the killer, the damage
was already done by Ortiz himself when he confessed to the murder in open court.
        We hold that, in the context of the entire case against
Appellant, the error in disclosing the results of codefendant Alford’s
polygraph results before the jury did not have a substantial or injurious effect
on the jury’s verdict and did not affect Appellant’s substantial rights. See
King, 953 S.W.2d at 271. Thus, we disregard the error. Tex. R. App. P. 44.2(b). In so
holding, we do not condone the conduct of the prosecutor, which might have
resulted in reversible error under other circumstances.
        We
overrule Ortiz’s sole point and affirm the trial court’s judgment.


                                                          ANNE
GARDNER
                                                          JUSTICE
 
PANEL B:   HOLMAN,
GARDNER, and MCCOY, JJ.
DO
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED:
August 18, 2005
 
NOTES
1. See Tex. R. App. P. 47.4.
2. Ortiz
claimed at trial that other prisoners in the jail holding tank coerced the
confession from him.
3. The
medical examiner testified that Holmes died from a “loose contact” gunshot
to the back of his head, meaning that the barrel of the gun was pressed loosely
to his skull when Ortiz pulled the trigger. The medical examiner’s testimony
was corroborated by the eyewitness account of Akins. This evidence also tended
to impeach Ortiz’s credibility; Ortiz claimed that he fired the fatal shot
four or five feet from Holmes.