Ruben T. **RODRIGUEZ, Jr.,** Appellant,

v.

The **STATE** of Texas, Appellee.

No. 07–97–0188–CR.

Court of Appeals of Texas, Amarillo.

June 10, 1998.

Rehearing Overruled July 13, 1998.

Mike Brown, Law Offices of Mike Brown, Lubbock, for appellant.

William C. Sowder, Chad Meacham, Dist. Attys., Lubbock, for appellee.

Before DODSON, QUINN and REAVIS, JJ.

QUINN, Justice.

Ruben T. Rodriguez, Jr. (appellant) appeals his conviction for sexual assault. Through three points of error, he questions 1) the trial court's decision to admit evidence of extraneous offenses, 2) the trial court's failure to provide an instruction limiting the purposes for which the jury could consider the extraneous offenses, and 3) the effectiveness of his counsel. We affirm.

### Background

C. O., a fourteen year old female, was spending the night with a cousin at appellant's house. As she slept on the floor of the living room near her cousin, appellant laid down beside her, raised her nightgown, attempted to unfasten her bra, unzipped her

pants (she wore jeans underneath the gown), slipped a hand down her pants, and inserted a finger into her vagina. Throughout the incident, appellant told C.O. to be quiet as she called for her cousin and tried to struggle free. Despite C.O.'s cries, her cousin remained asleep. Eventually, C.O. managed to strike her assailant, who then passed out on the floor. Whether he collapsed as a result of the strike or because he was drunk is unknown. However, evidence indicated that appellant had consumed several beers earlier and that he was known to pass out after drinking heavily.

Once free of appellant's hold, C.O. went to her aunt's bedroom. There she awoke her aunt and told her that she had been "touched" by someone in the house. In response, the woman told C.O. that it was probably appellant and then directed her to return to bed. C.O. persisted and eventually persuaded her aunt to follow her into the living room. When the two entered the room and turned the lights on, they found appellant lying where C.O. had left him.

Subsequently, appellant was indicted for sexual assault. At trial, a jury found him guilty of sexual assault. It also sentenced him to twenty years in prison.

### Points of Error One and Two

In his first two points, appellant complains of the trial court's refusal to exclude evidence of extraneous offenses and to instruct the jury about the purposes for which it could consider the evidence. We overrule the points.

The evidence in question arose during the following exchange:

Q: Now, you have testified that you don't think it's in Ruben's character to do anything like this.

A: Yes.

Q: Do you know what he is accused of?

A: Of sexual assault.

Q: And do you think that's a bad thing?

A: For a person that would do it, yes.

Q: So, it would take someone with a bad nature to do something like that?

A: Yes.

Q: And are you telling this jury or giving them the impression that your cousin, Ruben, is a nice person—

A: Yes, he is.

Q: —and wouldn't be capable of doing anything bad?

A: Yes.

\* \* \*

Prosecutor: We're of the opinion that they have opened the door to a litany of things, bad things.

Defense Counsel: I didn't open the door to anything.

Prosecutor: They have given the jury the impression that this guy is a great guy through their witness. And we're of the opinion that we have a right to go into—

Defense Counsel: I strenuously object, Your Honor.

Prosecutor: He asked her if it was in his character to do anything like this.

Court: I know.

Prosecutor: We didn't go looking for it. It happened. And it leaves a false impression to [sic] this jury.

Court: Well, the Court will overrule your objection, his objection.

Q: Do you think it's in Ruben's character to assault anyone?

A: No.

Q: Would you be shocked to know that he's been charged with aggravated assault, arrested for it? Did you know about that?

A: No, I didn't.

Q: Did you know that he has been arrested and convicted of DWI?

A: Yes.

Q: Twice,—

A: Yes.

Q: —two separate probations—two separate convictions?

A: Yes.

Q: You knew about that?

A: Uh-huh.

Q: Do you know that he had been arrested and charged with felony criminal mischief?

A: No.

Q: You didn't know about that?

A: No.

Q: Would those facts change your opinion of your cousin Ruben's character and his nature?

A: No.

Q: So, irregardless of anything he's done in the past, you're here to testify in his behalf?

A: Yes.

As can be seen, appellant objected to the State's attempt to interject evidence of aggravated assault, driving while intoxicated, and felony criminal mischief. However, once the objection was overruled, he did not contemporaneously request a limiting instruction. Nor did he later ask that one be included in the jury charge.

Finally, the exchange referred to by the State as purportedly opening the door consisted of appellant's counsel previously asking the following questions and receiving the following responses from the same witness:

Q: Have you ever had problems with Ruben in regards to matters as these that were brought up this night, that they're alleging happened this night?

A: No.

Q: Have any of your other friends ever complained about anything like that?

A: No.

Q: Have you ever had any problems with Ruben like that?

A: No.

Q: Do you think that that is even within Ruben's nature?

A: Yes.

Q: Do you think it's—I'm sorry. Let me ask you the question.

A: Do you think it's within Ruben's nature to do something like they are accusing him of doing?

Q: Oh, no.

### Complaint Regarding Admission of Extraneous Offenses

#### 1. Standard of Review

 In determining whether a trial court erred in admitting evidence, we apply a standard of abused discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990). That is, unless the decision fell outside the zone of reasonable disagreement, given the law and pertinent circumstances, we must uphold it. *Id.* Moreover, the law applicable to the admission of evidence like that at bar is well-settled. Same is inadmissible to prove the character of a person. TEX.R.CRIM. EVID. 404(b); *Abdnor v. State*, 871 S.W.2d 726, 738 (Tex.Crim.App.1994). This is due to its inherent prejudice and tendency to confuse the issues. *Id.* Yet, like all rules, this one has its exceptions. The one applicable here involves the accused's inviting the State to present it. That is, if an accused creates what is purported to be a false impression about his nature as a law abiding citizen or his propensity for committing criminal acts, then he has opened the door for his opponent to present rebuttal evidence. *Delk v. State*, 855 S.W.2d 700, 704 (Tex.Crim.App.), *cert. denied*, 510 U.S. 982, 114 S.Ct. 481, 126 L.Ed.2d 432 (1993); *Hammett v. State*, 713 S.W.2d 102, 105–106 (Tex. Crim.App.1986). Furthermore, the rebuttal evidence can consist of his criminal history. *Id.*

 Nonetheless, the court must proceed cautiously when encountering the situation. For instance, it must be assured of two things before granting the State permission to continue. The first is that the defendant opened the door and the second, that the door was opened far enough to allow the State to use the evidence it intends to use. As to the former, it is clear that only the accused has the authority to open the door; the State cannot do so via its examination of a witness or the defendant. *Hammett v. State*, 713 S.W.2d at 105 n. 4; *Shipman v. State*, 604 S.W.2d 182, 184–85 (Tex.Crim.App. 1980). As to the latter, it is similarly clear that while the door may be opened it is not necessarily opened for everything to pass through. In effect, the rebuttal evidence

cannot exceed the scope of 1) the question posed by appellant and 2) the answer given to it. *Delk v. State*, 855 S.W.2d at 703–705; *Hammett v. State*, 713 S.W.2d at 105–106. For instance, if the accused were asked by his attorney whether he had only been arrested once for public intoxication and the answer was yes, the State may not impeach the veracity of the answer by offering evidence that he was also convicted of criminal mischief. *Hammett v. State*, 713 S.W.2d at 107. This is so because evidence of criminal mischief does not impugn the veracity of the accused's statement that he was only arrested once for public intoxication. *Id.* Thus, the tenor of the dialogue between the appellant and counsel or appellant and witness dictates the nature of the evidence admissible for impeachment purposes.

### 2. Application of Standard

■ Here, the dialogue between defense counsel and the witness encompassed appellant's "nature" to commit criminal activity. Yet, the scope of the criminal activity referred to by counsel was limited. It encompassed his propensity for doing that which "happened this night" and which "they are *accusing* him of doing." (Emphasis added). Moreover, those particular acts consisted of his sexually assaulting C.O. or molesting a child. And, when the witness responded that she believed he lacked such nature, the door was opened for the State to present evidence impeaching the response.

■ Nevertheless, the impeaching evidence had to be limited to impugning the veracity of the witness' answers regarding appellant's nature to do that with which he was accused or which happened that night. It is arguable that evidence of aggravated assault fell within this scope, given the assaultive behavior or physical aggressiveness inherent in both crimes.[1] However, the same cannot be said of the evidence regarding appellant's having driven while intoxicated or partaken in criminal mischief. To borrow from *Hammett*, proving that appellant had been convicted of DWI and charged with

criminal mischief in no way impugned the veracity of the witness' statement regarding appellant's character to commit sexual assault. Thus, the evidence regarding DWI and criminal mischief was inadmissible.

We note the State's attempt to justify its action by arguing that the witness did eventually speak of appellant's nature in general. That is, she testified that he was "a nice person" and "[in]capable of doing anything bad." However, we cannot ignore the fact that those comments were made in response to questions posed by the State, not the appellant. And, in posing them, the State attempted to do that effectively prohibited by *Shipman*, *Delk*, and *Hammett*; it sought to widen the gap between the door and frame originally created by appellant. For this reason, we cannot accept the argument that because the witness eventually testified to appellant's nature in general, it was authorized to impeach the testimony via the evidence offered.

### 3. Harm Analysis

■ In sum, the evidence regarding DWI and criminal mischief contravened *Delk* and *Hammett*, and the court abused its discretion in admitting it. Nevertheless, that does not end our inquiry for we must also decide whether the error was harmful. And, we do this by determining whether it affected appellant's substantial rights. TEX.R.APP. P. 44.2(b); *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997). Though this particular standard is new to the state judiciary, it is commonplace in the federal realm. Indeed, that has long been the test for harm applied by the federal judiciary. *See* 28 U.S.C.S. § 2111; FED.R.CRIM.P. 52(a). Furthermore, in applying that test the courts have sought to determine whether the judgment was "substantially swayed by the error" after "pondering all that happened without stripping the erroneous action from the whole." *Kotteakos v. United States*, 328 U.S. 750, 756, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). In other words, they have sought to determine the

---

1. At the very least, this basic similarity between the two crimes would have placed the trial court's decision to admit evidence of aggravated assault within the zone of reasonable disagreement. And, that is all *Montgomery* requires to insulate the decision against a claim of abused discretion.

possible extent, if any, of the error's affect on the verdict. And, if after reviewing the record as a whole, they concluded that there was no affect or that the affect was slight, then the error was held harmless. *United States v. Rodriguez*, 43 F.3d 117, 123 (5th Cir.), *cert. denied*, 515 U.S. 1108, 115 S.Ct. 2260, 132 L.Ed.2d 265 (1995); *United States v. Palmer*, 37 F.3d 1080, 1087 (5th Cir.1994), *cert. denied*, 514 U.S. 1087, 115 S.Ct. 1804, 131 L.Ed.2d 730 (1995). Though couched in slightly different terms, the Texas Court of Criminal Appeals adopted this test in construing Rule 44.2(b). In *King*, it stated that a substantial right is affected "when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d at 271. Moreover, it cited *Kotteakos* in support of the holding. Thus, it appears that the federal standard for harmless error has effectively become the state standard.

Next, in applying the rule to the circumstances before it, the court in *King* focused upon the quantum of evidence properly admitted and the extent to which the improper evidence was emphasized by the prosecution. *Id.* at 271–73. We too focus upon those factors but add to the equation the type of error committed and whether the prosecutor sought to improperly taint the jury's mind before the court could act.[2] Here, the error involved the use of collateral crimes which, as mentioned above, carries with it the inherent tendency to prejudice and confuse. Yet, before the prosecutor delved into them, it sought guidance from the court. In other words, its acts were not unilateral which, in turn, indicates that the State did not seek to improperly taint the jury. Furthermore, no one mentioned the inadmissible evidence again during the guilt/innocence phase of the trial. So, the extent to which the jury may have recalled and assigned it weight is questionable. Finally, though it was not free of conflict, ample evidence was properly admitted which depicted appellant's guilt. Given these circumstances, we are confident that

the impact of admitting evidence that appellant had partaken in criminal mischief or driven while intoxicated was anything more than slight, if that much. So, we must hold it harmless under Texas Rule of Appellate Procedure 44.2(b).

### Complaint Regarding the Absence of a Limiting Instruction

■ As to the matter of the limiting instruction, appellant did not ask for one. Thus, he cannot complain of its absence on appeal. TEX.R.APP. P. 33.1(a); TEX.R.CRIM. EVID. 105(a) (stating that in absence of a request for a limiting instruction, the court's action in admitting the evidence without limitation shall not be a ground for complaint on appeal).

### Ineffective Assistance of Counsel

In his remaining point, appellant argues that his counsel was unreasonably ineffective. The conduct which allegedly evinced such ineffectiveness consisted of his failure 1) to object to hearsay uttered by the complaining witness, 2) to object to the extraneous evidence discussed under points one and two above, and 3) to request a limiting instruction. We overrule the point.

### Standard of Review

■ Resolution of any dispute regarding the effectiveness of counsel begins with the presumption that counsel was effective. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim.App.1994). Not only does this mean that we assume his actions and decisions were reasonably professional but also that they were motivated by sound trial strategy. *Id.; Rodriguez v. State*, 955 S.W.2d 171, 176 (Tex.App.—Amarillo 1997, no pet.). Thus, it is incumbent on the appellant to rebut these presumptions by establishing that 1) counsel's performance was so deficient that he failed to function as the type of counsel guaranteed by the constitution and 2) that the failure prejudiced appellant.[3] *Id.; Villatoro*

---

2. As to the matter of the type of error, it must be admitted that different error has different potential impact. For instance, it may be wrong to lead a witness. Yet, the affect that leading questions may have upon a jury is most likely not as prejudicial as the affect of trying the accused on the basis of collateral crimes or bad reputation.

3. One establishes prejudice by illustrating the existence of a reasonble probability that but for

*v. State*, 897 S.W.2d 943, 946 (Tex.App.—Amarillo 1995, pet. ref'd). Among other things, this obligates the complainant to first specify the particular acts or omissions allegedly constituting ineffectiveness and then prove that they fell below the professional norm of reasonableness. *Garcia v. State*, 887 S.W.2d 862, 880 (Tex.Crim.App.1994), *cert. denied*, 514 U.S. 1021, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995). So too does it require him to present evidence illustrating why counsel did what he did and how that strategy was unsound. *Jackson v. State*, 877 S.W.2d at 771; *Rodriguez v. State*, 955 S.W.2d at 176–77; *Davis v. State*, 930 S.W.2d 765, 769 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd).[4]

### Application of Standard

*1. Failure to Object to Hearsay Statements*

Appellant first contends that his trial counsel was ineffective because he failed to object to "hearsay statements of the complaining witness" reiterated by Irma Garcia, a police officer, a rape crisis volunteer, and a physician's assistant. We disagree for several reasons.

First, nothing of record indicates why trial counsel withheld objection. Thus, there is no evidence rebutting the presumption that

counsel acted pursuant to sound trial strategy. Furthermore, withholding objection to inadmissible evidence could have been part of a sound trial strategy. *See Hathorn v. State*, 848 S.W.2d 101, 120 (Tex.Crim.App.1992), *cert. denied*, 509 U.S. 932, 113 S.Ct. 3062, 125 L.Ed.2d 744 (1993) (recognizing that the decision to withhold objection to inadmissible evidence may arise from sound trial strategy).[5] Nevertheless, we are not free to speculate upon the matter. *Jackson v. State, supra; Rodriguez v. State, supra.* Rather, it's appellant's burden to prove what the strategy was and why it was unreasonable. This he did not do.

Second, the witnesses merely reiterated C. O.'s identification of appellant as the assailant. In doing so, they were not imparting hearsay but proffering evidence admissible under Rule 801(e)(1)(C) of the Texas Rules of Evidence.[6] *Moyer v. State*, 948 S.W.2d 525, 530 (Tex.App.—Fort Worth 1997, pet. ref'd); *Miller v. State*, 843 S.W.2d 265, 267 (Tex. App.—Fort Worth 1992, no pet.). And, because they were not hearsay, nothing obligated trial counsel to make a specious objection on the basis of hearsay. *See Butler v. State*, 872 S.W.2d 227, 245 (Tex.Crim.App.1994), *cert. denied*, 513 U.S. 1157, 115 S.Ct. 1115, 130 L.Ed.2d 1079 (1995) (holding that counsel need not object to admissible evidence to be effective).[7]

---

counsel's mistakes, the fact finder "would have had a reasonable doubt respecting guilt." *Garcia v. State*, 887 S.W.2d 862, 880 (Tex.Crim.App. 1994), *cert. denied*, 514 U.S. 1021, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995). One does not satisfy this standard by merely alleging that the errors had some conceivable effect on the outcome of the proceedings. *Id.*

4. For example, if counsel failed to object to a bit of evidence, then it is assumed he had legitimate reason for doing so, and his client has to prove otherwise. *Rodriguez v. State*, 955 S.W.2d 171, 176–77 (Tex.App.—Amarillo 1997, no pet.).

5. Because the Texas Court of Criminal Appeals recognized, in *Hathorn*, that the failure to object to inadmissible and prejudicial testimony may be part of a legitimate strategy, we reject appellant's suggestion that it can never be. Additionally, none of the cases cited by appellant as support for his suggestion, that is, *Ex parte Welborn*, 785 S.W.2d 391 (Tex.Crim.App.1990), *Castoreno v. State*, 932 S.W.2d 597 (Tex.App.—San Antonio 1996, pet. ref'd), and *Owens v. State*, 916 S.W.2d 713 (Tex.App.—Waco 1996, no pet.) so hold.

6. Rule 801(e)(1)(C) of the Texas Rules of Evidence expresses that statements are not hearsay if 1) the declarant testified at trial, 2) the declarant was available for cross-examination, and 3) the declaration involved the identification of a person after perceiving the person. Each of these criteria were met at bar.

7. We are not unmindful of the comment in *Ex parte Welborn* that the "possibility" that evidence was admissible under some theory of law does not relieve counsel from putting the State's case to the "adversarial testing process." *Ex parte Welborn*, 785 S.W.2d at 395. But, to the extent that the utterance can be read as obligating counsel to object to admissible evidence, we believe it to be wrong. Indeed, since *Welborn*, the Court of Criminal Appeals has held that withholding objection to potentially admissible evidence may be sound trial strategy. *Patrick v. State*, 906 S.W.2d 481, 496 (Tex.Crim.App.1995), *cert. denied*, 517 U.S. 1106, 116 S.Ct. 1323, 134 L.Ed.2d 475 (1996). So, if withholding objections to such testimony can be part of counsel's legitimate strategy, it follows that counsel need

### 2. Failure to Object to Evidence of Extraneous Offenses

■ Next, appellant contends that counsel was ineffective because he failed to object to the admission of the extraneous offense evidence discussed under points one and two. Yet, as illustrated by the dialogue between defense counsel, the prosecutor, and the court which we transcribed above, an objection was made which should have been sustained. Thus, we cannot hold him ineffective for failing to object.

### 3. Failure to Request a Limiting Instruction

■ Finally, appellant asserts that trial counsel was ineffective since he failed to "object to the court's charge or request a proper limiting instruction concerning extraneous offenses." We again disagree.

As previously mentioned, it is presumed that counsel's actions were motivated by sound trial strategy. Appellant had the burden to rebut that presumption via evidence of what that strategy was and why it was unreasonable. Yet, nothing appears of record indicating why counsel did not request the instructions. Indeed, he could have done so merely because he did not want to bring further attention to the evidence. And, if that were his reason for remaining silent, it was a legitimate and acceptable reason. *Abbott v. State*, 726 S.W.2d 644, 649 (Tex.App.—Amarillo 1987, pet. ref'd); *see Garcia v. State*, 887 S.W.2d at 881 (recognizing that sound trial strategy may consist of failing to request a limiting instruction in order to avoid bringing more attention to the evidence in question). Nevertheless, we are not permitted to speculate on counsel's motivations. *Jackson v. State*, 877 S.W.2d at 771. Rather, we may only conclude that appellant failed to carry his burden of proof *vis-a-vis* the complaint.

Accordingly, we affirm the judgment of the trial court.

not object to admissible evidence simply to be effective or to simply put the State to the "adversarial testing process."

1. *See King v. State*, 953 S.W.2d 266 (Tex.Crim. App.1997). The cases with the most thorough discussion of the harmless error analysis are

DODSON, Justice, concurring.

I concur with the majority's general analysis and with the result. However, I am writing primarily to express my views on the analysis necessitated by the new harmless error standard under Rule 44.2(b) of the Texas Rules of Appellate Procedure. In this regard, I note that the various Texas Courts of Appeals have decided slightly over two dozen reported cases citing the new rule and the Court of Criminal Appeals has decided one. However, the majority of these decisions do not report any substantial discussion of the new standard.[1]

It is well settled that the admission or exclusion of evidence is a matter within the discretion of the trial court. *Johnson v. State*, 698 S.W.2d 154, 160 (Tex.Crim.App. 1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). Moreover, the erroneous admission of evidence is reviewed under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex.Crim.App.1991). However, once an appellate court determines that the trial court abused it's discretion in admitting evidence, the appellate court must then determine whether the erroneous admission was harmful. Tex.R.App. P. 44.2.

Rule 44.2 delineates the standards of harm analysis. The recent changes to the harmless error rule essentially make the analysis in Texas comparable to the federal standard. Rule 44.2(a) represents the old Texas standard which was itself based on the federal harm analysis of constitutional error enunciated by the United States Supreme Court in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, (1967) (to disregard constitutional error, reviewing court must be able to declare a belief that error was harmless "beyond a reasonable doubt").

Rule 44.2(b) is the new rule on harm analysis for non-constitutional error. As the com-

*Fowler v. State*, 958 S.W.2d 853 (Tex.App.—Waco 1997, pet. granted); *Weatherred v. State*, 963 S.W.2d 115 (Tex.App.—Beaumont Jan.21, 1998, no pet. h.); *Garza v. State*, 963 S.W.2d 926, (Tex.App.—San Antonio Feb. 25, 1998, no pet. h).

ments under Rule 44.2 note, 44.2(b) is taken from Rule 52(a) of the Federal Rules of Criminal Procedure. Under either rule, an appellate court must disregard any error, defect, irregularity, or variance that does not affect substantial rights. While this standard is certainly less onerous than the "beyond a reasonable doubt" rule that now applies only to constitutional error, it is unclear how a reviewing court applies the non-constitutional error rule.

Texas authority on the new standard is still somewhat sparse. The Court of Criminal Appeals recently stated that "[a] substantial right is affected when the error had a substantial and injurious affect or influence in determining the juror's verdict." *King v. State*, 953 S.W.2d 266 (Tex.Crim.App.1997) (applying Rule 44.2(b) for the first time). In *King*, the Court noted that the potential harm of the complained of evidence was "defused" by properly admitted evidence. *Id.* at 273. In reaching its conclusion, the Court noted that the complained of evidence (pen packets containing information regarding the defendant's previous incarcerations) was before the jury through other properly admitted evidence and that the State did not emphasize the complained of evidence to the jury. Citing *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), the Court concluded that the complained of evidence, if improperly admitted, did not have "substantial or injurious" affect on the jury's verdict. *King*, at 273. Considering the comment to Rule 44.2(b) referencing the federal rule as well as the Court of Criminal Appeals reliance on *Kotteakos*, it is clear that the federal authority regarding harm analysis of non-constitutional error is at least persuasive.

*Kotteakos* is the seminal case on non-constitutional error harm analysis. Under the *Kotteakos* standard, an appellate court must disregard error that does not affect a substantial right of the defendant. In *Kotteakos*, the U.S. Supreme Court explained the standard of review:

If, when all is said and done, the [reviewing court] is sure that the error did not influence the jury or had but very slight effect, the verdict and judgment should

stand.... But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.... [The question is] whether the error itself had substantial influence.

*Kotteakos* at 765, 66 S.Ct. 1239. Thus, the reviewing court must consider the impact of the error in light of the entire record. Moreover, if there is "grave doubt" about whether the error affected the outcome, the reviewing court must treat the error as if it did, and reverse. *U.S. v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986). Otherwise, the error should be disregarded when the reviewing court determines that such error did not adversely affect the jury's verdict, or had only slight effect on the verdict.

In the case before us, the error is clearly an evidentiary matter and not a constitutional one. *See Garza v. State*, 963 S.W.2d 926, 930 (Tex.App.—San Antonio 1998, no pet.) (applying Rule 44.2(b) to erroneous admission of extraneous offenses). Thus, the *Kotteakos* analysis applies in determining whether harm resulted from the error. That analysis is two-part. First, we must ascertain whether a substantial right of the defendant was implicated by the error. If no substantial right was affected, then necessarily the defendant could not suffer any substantial or significant harm. Second, it follows that if a substantial right is affected by the error, the right must be *adversely* affected. See *Garza*, 963 S.W.2d at 929 (citing *Ex parte Fierro*, 934 S.W.2d 370, 377 n. 14 (Tex.Crim.App.1996)) finding that reversible error must be prejudicial under the *Kotteakos* rule).

It is also important to note that the appellate court does not "determine harmfulness of an error simply by examining whether there exists overwhelming evidence to support the defendant's guilt." *Garza*, at 930 (citing *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App.1989)). The reviewing court should instead calculate as much as possible the probable impact the error had on the jury in light of the existence of other evi-

**374**

dence. *Id.* The question is not whether the outcome was proper or there was overwhelming evidence of guilt, but rather whether the overwhelming evidence "dissipates the error's effect upon the jury's function in determining the facts so that it did not contribute to the verdict." *Id.* If the properly admitted evidence dissipates the error's effect so that it does not, or only slightly, affects the verdict, the appellate court should disregard the error.

Applying this body of law to the case before us, we should conclude, as the majority does, that the error here was harmless. First, the substantial right affected by the admission of extraneous offenses is the right to a fair trial. See *Garza* at 931; U.S. Const. amends. V & VII; Tex. Const. art. I § 10. A defendant must be tried only for the offense with which he is charged. He may not be tried for a collateral crime or for being a criminal generally. Tex.R. Evid. 404(b); *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim.App.1991). As the majority notes, in the case before us, the prosecution's questions of the witness exceeded the scope of the opening created by questions and answers on direct. See *Hammett v. State*, 713 S.W.2d 102, 105–106 (Tex.Crim.App.1986). The State was limited to bringing up extraneous offenses that countered the witness's statements; *i.e.*, that it was not in appellant's character to commit sexual assault. Under Rule 404(b) of the Rules of Evidence, it is clear that evidence of unrelated arrests or convictions for DWI, criminal mischief, and assault do nothing to show a motive, opportunity, or plan to commit a sexual assault. Nor does any other permissible purpose exist for such evidence in this situation. However, in the context of the sexual assault charge, evidence of these extraneous offenses does implicate the appellant's substantial right to be tried only for the crime charged and not as a criminal generally.

Nevertheless, I would also conclude as the majority does that the admission of such evidence was harmless since it did not adversely affect the appellant's substantial right; in other words, the error did not adversely affect the jury's verdict, or had only slight effect on the verdict. As the majority notes, the extraneous offenses were not mentioned again during the liability portion of the trial. Additionally, the State presented an abundance of evidence in it's case-in-chief. While the existence of overwhelming evidence is not itself enough for us to conclude there was no harm, the relative impact of the erroneously admitted evidence on the jury is certainly relevant to our determination. See *Kotteakos*, 328 U.S. at 765, 66 S.Ct. 1239; *Garza*, 963 S.W.2d at 930–31. Given the strength of the State's case, and the relatively slight significance of this single witness's testimony regarding appellant's character to commit sexual assault, I cannot conclude that the extraneous offense evidence adversely affected the jury's verdict.

Consequently, I would affirm the conviction.

