Nos. 04-99-00017-CR & 04-99-00018-CR


Orlando MORALES,


Appellant



v.



The STATE of Texas,


Appellee



From the 290th Judicial District Court, Bexar County, Texas


Trial Court Nos. 96-CR-4514A & 96-CR-4515A


Honorable Sharon MacRae (1) & Honorable Bill M. White (2), Judges Presiding



OPINION ON APPELLANT'S MOTION FOR REHEARING



Opinion by: Catherine Stone, Justice


Sitting: Phil Hardberger, Chief Justice

 Catherine Stone, Justice

 Sarah B. Duncan, Justice


Delivered and Filed: November 8, 2000


APPELLANT'S MOTION FOR REHEARING DENIED; AFFIRMED


 Orlando Morales has filed a motion for rehearing in which he argues that both our analysis
and ultimate rejection of his contention that the trial court erred in denying his motion for new trial
without an evidentiary hearing are faulty. Although we deny Morales' motion for rehearing, we
withdraw our opinion of January 26, 2000, and substitute this one in its place for the sole purpose
of clarifying our treatment of that issue.

 A jury convicted Morales for the offenses of aggravated assault and murder. In multiple
issues on appeal, Morales challenges the factual sufficiency of the evidence and several evidentiary
rulings by the trial court. We overrule Morales' challenges and affirm the judgments of the trial
court.

Factual and Procedural Background

 On April 23, 1996, Joe Mata, a member of the Big Time Kings (BTK) gang, met appellant
Morales at Morales' home and planned to shoot Crespin Donnell, a member of a rival gang. Mata
disliked Crespin because Crespin's cousin dated Mata's younger sister. Several witnesses overheard
Morales state that he would drive Mata in his vehicle to shoot Crespin at a relative's house on
Lombrano Street. Close to nine o'clock in the evening, Rogelio and Sonia Lozano returned with
their two small children to their home on Lombrano. As they exited their vehicle, multiple shots
were fired. Rogelio was fatally wounded and Sonia was shot in the leg. The bullets recovered from
the scene and the victims matched the gun which witnesses testified Mata possessed that evening.
Two days later, Mata shot Crespin on Lombrano Street. A jury found Morales guilty of aggravated
assault and murder, sentencing him to a suspended sentence of community supervision for ten years
for the assault and fifteen years incarceration for the murder conviction.

Factual Sufficiency

 In his first issue, Morales argues the evidence is factually insufficient to support his
conviction because no direct evidence exists that he drove the vehicle involved in the shooting
outside the Lozano residence. 

 We review challenges to factual sufficiency in criminal cases without the prism of "in the
light most favorable to the prosecution" and set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d
126, 129 (Tex. Crim. App. 1996). Deference should be given to the trial court so that the appellate
court is not merely substituting its judgment. Id. at 135. Even in factual sufficiency reviews, the jury,
as trier of fact, remains the sole judge of witness credibility. Anderson v. State, 895 S.W.2d 756, 757
(Tex. App.-Texarkana 1994, no pet.).

 Turning to the instant case, a review of the record reveals that several witnesses testified that
Morales agreed to drive his vehicle with Mata as a passenger to shoot Crespin. Chris Sandoval
testified that on the night of the shooting, several people gathered at Morales' house to smoke
marijuana and drink beer. He testified that Mata stated he wanted to shoot Crespin and Morales
volunteered to drive. Sandoval further testified that Mata revealed his anger at hitting the wrong
person on the night the Lozanos were shot. He testified that Morales and Mata discussed how to get
rid of Morales' car "just in case anybody saw." Eddie Lopez, also present at Morales' home the
night of the shooting, corroborated Sandoval's testimony. Lopez stated that Morales agreed to drive
Mata to shoot Crespin. Lopez also testified that he heard Morales and Mata discuss trading in
Morales' car to cover any identification problems. Lopez later observed Morales driving a different
car. In light of this testimony, it does not appear that the jury's finding was manifestly unjust,
demonstrated bias, or shocked the conscience. Clewis, 922 S.W.2d at 135. Point of error number
one is overruled.



Evidentiary Rulings In his second through fifth issues, Morales challenges the trial court's admission of evidence
that Mata shot Crespin two days after the Lozano shooting. Morales complains the trial court erred
in admitting this evidence because it was irrelevant, improper character evidence, unduly prejudicial,
and in violation of notice requirements specified in the rules of criminal procedure. 

 We review the trial court's exclusion of evidence under an abuse of discretion standard.
Jones v. State, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996), cert. denied, 522 U.S. 832 (1997). A
trial judge abuses his discretion if he acts arbitrarily and unreasonably, without reference to any
guiding rules or principles. See Breeding v. State, 809 S.W.2d 661, 663 (Tex. App.-Amarillo 1991,
pet. ref'd).

 Even if we assume that the trial court abused its discretion in admitting the evidence of
Mata's subsequent shooting of Crespin, the error is harmless. We must disregard a non-constitutional
error, such as a violation of an evidentiary rule, that does not affect substantial rights of the
defendant. See Tex. R. App. P. 44.2(b); Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App.
1998) (treating violation of rules of evidence as non-constitutional error). A substantial right is
affected "when the error had a substantial and injurious effect or influence in determining the jury's
verdict." King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Factors relevant to our
determination of whether the error affected Morales' substantial rights include the quantum of
evidence properly admitted, the extent to which the improper evidence was emphasized by the
prosecution, and whether the prosecutor sought to improperly taint the jury's mind before the court
could act. See Rodriguez v. State, 974 S.W.2d 364, 370 (Tex. App.-Amarillo 1998, pet. ref'd). 

 We first consider the quantum of evidence properly admitted. See King, 953 S.W.2d at 272;
accord Rodriguez, 974 S.W.2d at 370. Here, the State presented testimony from two key witnesses
who testified that Morales agreed to drive Mata to shoot Crespin on the night the Lozanos were shot.
The jury heard testimony from Sandoval, who stated that while he was at Morales' house, he heard
Morales, Mata, and a third co-actor, Gilbert Ortiz, planning to shoot Crespin on the night the
Lozanos were shot. The day after the Lozanos were shot, he testified that he discussed the shooting
with Mata in the presence of Morales. Sandoval testified that Mata was angry "because he hit the
wrong person." Sandoval stated that at no time during the discussion did Morales deny his
involvement in the shooting. Further, Sandoval heard Morales and Mata discuss how to dispose of
Morales' car. The jury also heard testimony from Lopez who also attended the gathering outside
Morales' house on the night of the Lozano shootings. Lopez corroborated Sandoval's testimony that
Morales agreed to drive Mata. He testified that he observed Morales get into the driver's seat of his
car, Mata take the passenger side, and Ortiz and Elias Gomez occupy the backseat. Approximately
fifteen to twenty minutes after the group left Morales' house, Lopez heard gunshots. Soon
thereafter, he encountered Gomez, who Lopez testified appeared sweaty, out of breath, and nervous.
Consistent also with Sandoval's testimony, Lopez later overheard Morales and Mata discuss how
to trade Morales' car. Lopez also testified that during this cover-up discussion he heard Morales
state, "get the story straight." Morales contests the credibility of these witnesses on the grounds of
contradiction during cross-examination. Morales takes issue with conflicts over where these
discussions at Morales' house took place, specifically, whether they took place under the carport or
on a porch. We classify these distinctions as merely semantics noting that regardless of the specific
location on Morales' drive, the discussions took place. In any event, we decline to second-guess the
jury's role as arbiter of credibility issues. See Anderson, 895 S.W.2d at 757. Further, the jury is
entitled to draw reasonable inferences from the facts introduced at trial. Kapuscinski v. State, 878
S.W.2d 248, 249 (Tex. App.-San Antonio 1994, pet. ref'd).

 In addition to the degree of testimony introduced, we note that evidence of the subsequent
shooting was not emphasized by the prosecution throughout the course of the trial. Although the
State did question several witnesses concerning their knowledge of the subsequent shooting, the
point was not belabored throughout the course of the trial. Rather, a review of the record reveals the
focus of the trial centered on Morales's involvement in the shooting at the Lozano residence. Thus,
with respect to our third consideration, we do not believe that the State sought to improperly taint
the jury's mind. Regardless, we hold that the introduction of this evidence was harmless when
weighed against the countervailing testimony which linked Morales to the Lozano shootings. Points
of error numbers two through five are overruled.

Motion for New Trial


 In his final point of error, Morales argues the trial court erred in denying his motion for new
trial without conducting an evidentiary hearing. As a preliminary matter, the State argues Morales
failed to file a motion for new trial and waived any error. The record contains Morales' motion
along with the trial court's denial, thus this issue is preserved for our review.

 In his motion for new trial, Morales alleges that the State withheld exculpatory evidence. See
Brady v. Maryland, 373 U.S. 83, 87 (1963). Within his motion, Morales included an affidavit from
Reynaldo Martinez, an investigator. In his affidavit, Martinez explains that he had a conversation
with Eddie Lopez, one of the State's key witnesses, who made the following statements:

 (1) "the District Attorney told him not to talk to anybody;"

 (2) "the D.A.'s office told him that Elias stated that it was Eddie and Daniel who shot
and killed Mr. Lozano;" and 

 (3) "the D.A.'s office kept pressure on him to sign his statement or go to jail." 


Morales argues that he is entitled to a hearing on his motion for new trial in light of Lopez's
statements contained in Martinez's affidavit. See McIntire, 698 S.W.2d 652, 660 (Tex. Crim. App.
1985). In response, the State contends none of the statements entitle Morales to a new trial because
they are inadmissible hearsay and have no bearing on the ultimate outcome of the trial. We agree
with the State's position.

 The right to a hearing on a motion for new trial is not an absolute right. Reyes v. State, 849
S.W.2d 812, 816 (Tex. Crim. App. 1993). We review the trial judge's decision to deny a hearing
on a motion for new trial under an abuse of discretion standard. State v. Gonzales, 855 S.W.2d 692,
696 (Tex. Crim. App. 1993). When a motion for new trial presents matters that are not determinable
from the record, the trial judge abuses his discretion by failing to hold a hearing. Reyes, 849 S.W.2d
at 816. Because an unrestricted requirement of holding hearings on matters not determinable from
the record could lead to "fishing expeditions," the motion must be supported by an affidavit of the
defendant or someone else, specifically showing the truth of the grounds alleged as a basis for a new
trial. Id. The trial court need not consider an affidavit that contains inadmissible evidence. See
Martin v. State, 823 S.W.2d 391, 393 (Tex. App.-Texarkana), pet. ref 'd, 830 S.W.2d 137 (Tex.
Crim. App. 1992). 

 Here, although Morales' motion for new trial alleged matters not determinable from the
record, we are unable to conclude that the trial court abused its discretion in failing to hold a hearing
on his motion in which he complained about the withholding of exculpatory evidence. Exculpatory
evidence is evidence which tends to justify, excuse or clear the defendant from alleged fault or guilt.
Thomas v. State, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992). Statements one and three (3) contained
in Martinez's affidavit, even if true, would not excuse or clear Morales of the allegations of
committing aggravated assault and murder. That is, the investigative techniques employed by the
District Attorney's office had no bearing on the historical facts surrounding Morales' involvement
in the shootings at the Lozano residence. The statements are not properly considered exculpatory,
and thus the trial court was not required to hold a hearing to develop those issues. Moreover, the
statements are hearsay and do not constitute admissible evidence. See Martin, 823 S.W.2d at 393.
Lopez's second statement - his contention that "the D.A.'s office told him that Elias stated that it
was Eddie and Daniel who shot and killed Mr. Lozano" - likewise did not require the trial court to
hold a hearing on Morales' motion because it is hearsay within hearsay, which is clearly inadmissible
evidence. See Tex. R. Evid. 805 (requiring that, to be admissible, each part of hearsay within
hearsay must conform to hearsay exception); see also Martin, 823 S.W.2d at 393. Neither Lopez
nor Martinez, for example, witnessed the shooting, and therefore, any statements either man made
regarding the identity of the shooter would be inadmissible under Rule of Evidence 602. See Tex.
R. Evid. 602 (providing that witness may only testify to matters of which he has personal
knowledge). Because the supporting affidavit was deficient, the trial court did not abuse its
discretion by failing to hold a hearing on the motion for new trial. See Jordan, 883 S.W.2d 664, 665
(Tex. Crim. App. 1994). Point of error number six is overruled.

 The judgments of the trial court are affirmed.

 Catherine Stone, Justice

DO NOT PUBLISH

1. The Honorable Sharon MacRae presided in cause number 96-CR-4514A.
2. The Honorable Bill White presided in cause number 96-CR-4515A.
3. Statement one is Lopez's contention that "the District Attorney told him not to talk to anybody." Statement
three is Lopez's contention that "the D.A.'s office kept pressure on him to sign his statement or go to jail."