**Opinion filed October 31, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00314-CR

_____

### SONNY DELACRUZ, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 17837B**

### M E M O R A N D U M   O P I N I O N

The jury convicted Sonny Delacruz of two counts of indecency with a child.[1] The jury assessed Appellant's punishment in each count at confinement for life after it found "true" to an enhancement paragraph related to Appellant's prior conviction for aggravated sexual assault. The trial court sentenced Appellant accordingly. We affirm.

---

[1]*See* TEX. PENAL CODE ANN. § 21.11(a)(2) (West 2011).

## I. *Evidence at Trial*

PSEUAVI[2] testified that Appellant first inappropriately touched her soon after he moved into the house where she, her mother, and her siblings lived. PSEUAVI said that Appellant touched her "crotch" or "female sex organ" and "chest" or "breasts," over her clothes, as he tickled her and that he did so on more than ten occasions. The victim further testified that Appellant threatened to hit her if she told anyone. The victim said that Appellant "would sometimes get on top of me and grind his hips against mine" and that he would grind "[h]is hip area" against her "hip area and thighs."

The State also called E.I., PSEUAVI's younger sister, to testify about similar acts by Appellant against E.I. Prior to the time that E.I. testified, a hearing was held outside the presence of the jury so that the trial court could determine whether to allow E.I. to testify that Appellant had inappropriately touched her. Appellant objected to the testimony under Rules 401, 404(b), and 403 of the Texas Rules of Evidence. TEX. R. EVID. 401, 403, 404(b). The trial court found that the evidence was probative of Appellant's motive, opportunity, plan, and intent and admitted the testimony. E.I. then testified that, on one occasion, Appellant took her into her mother's bedroom, got on top of her, and touched her "crotch area" with his "crotch area."

During Appellant's case-in-chief, the victim's mother, Rosemary, testified that she had kicked Appellant out of the house before the victim told her what Appellant had done. Rosemary kicked him out because she suspected that Appellant was having an affair. Rosemary noted that Appellant's infidelity and his abusive behavior caused her children pain but that she did not know about the sexual abuse until PSEUAVI told her about it. Appellant's trial counsel asked

---

[2]"PSEUAVI" is a pseudonym for the victim.

Rosemary whether she had ever suspected that Appellant had sexually abused PSEUAVI, and Rosemary responded:

> No, I had noticed a change in her attitude, though. She was -- she would get to where when me and him would argue or he would ask her to do something, she would lash out at him, and tell him, I hate you, I don't want you here, but it never came to me clear as to why, and me, my frame of thinking, because I was always working, and I would come home, and the days that I was home I would think, well, you know, she, you know, doesn't want him telling her what to do or she just doesn't feel like doing it, you know, she doesn't want to do it. That was my frame of mind of thinking, but never would it cross my mind or did it cross my mind that this would happen.

The prosecutor requested a hearing outside the presence of the jury so that the trial court could determine whether it was proper to question Rosemary about her knowledge of Appellant's prior convictions for aggravated sexual assault of two minor girls. The prosecutor argued that Rosemary's testimony left the jury with the false impression that she never suspected that Appellant would sexually abuse her children. The State wanted to introduce evidence that Rosemary knew of Appellant's prior convictions in order to correct this false impression. Appellant contended that Rosemary's knowledge of Appellant's prior convictions was not relevant for impeachment and that the evidence was inadmissible under Rules 403, 404(b), and 608. The trial court gave a limiting instruction to the jury that the evidence of prior convictions could only be used to evaluate Rosemary's credibility concerning her knowledge of Appellant's prior convictions for aggravated sexual assault.

## II. *Issues Presented*

Appellant presents us with two issues on appeal: (1) that the trial court erred when it admitted evidence of an extraneous offense—indecency with a child by contact—against the victim's sister and (2) that the trial court erred when it

allowed the prosecutor to question Rosemary, during the guilt/innocence phase of trial, about her knowledge of Appellant's prior convictions for aggravated sexual assault of two other children.

### III. *Standard of Review*

A trial court's ruling on the admission of extraneous offense evidence is reviewed under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). We also review the trial court's admission of prior convictions under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). As long as the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion, and we will uphold the ruling. *De La Paz*, 279 S.W.3d at 343–44. A trial court's ruling is within this zone if the evidence shows that (1) an extraneous transaction is relevant to a material, non-propensity issue and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *Id.* at 344.

### IV. *Analysis*

#### A. *Appellant's Extraneous Offense*

Rule 404(b) prohibits the admission of evidence of extraneous offenses committed by the defendant to prove that, on the occasion in question, the defendant acted in conformity with the character demonstrated by the other bad acts. *Santellan v. State*, 939 S.W.2d 155, 168 (Tex. Crim. App. 1997). Rule 404(b) provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Evidence of extraneous offenses is admissible if relevant to a fact of consequence apart from the tendency to show conduct in conformity with character. *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). The exceptions under Rule 404(b) are neither mutually exclusive nor collectively exhaustive. *De La Paz*, 279 S.W.3d at 343. Rule 404(b) is a rule of inclusion rather than exclusion. *Id.* Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court. *Id.* So, too, is a ruling on the balance between probative value and the counter factors set out in Rule 403, although that balance is always favored toward admission, not exclusion, of otherwise relevant evidence. *Id.*

One well-established rationale to admit evidence of extraneous offenses is to rebut a defensive theory that negates one of the elements of the offense. *Id.*; *Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005). A party may introduce evidence of other crimes, wrongs, or acts if such evidence logically makes more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact. *De La Paz*, 279 S.W.3d at 343; *Martin*, 173 S.W.3d at 466. But a mere denial of the commission of an offense rarely opens the door to the admission of extraneous offenses. *De La Paz*, 279 S.W.3d at 343.

Appellant contends that the victim fabricated her accusations. His argument closely resembles the theory presented by the defendant in *Bass v. State*, 270 S.W.3d 557 (Tex. Crim. App. 2008). There, the State charged that the defendant, a pastor, inappropriately touched a teenager while on church property. In the defense counsel's opening statement, counsel claimed that the teenager's accusations were "pure fantasy" and "pure fabrication." 270 S.W.3d at 557. Defense counsel further claimed that the allegations were "contrary to [his]

character" and "not worthy of belief" because, "[a]s a pastor and minister," he was "the real deal and the genuine article." *Id.* at 557–58.

After the complainant testified, the trial court in *Bass* permitted the State to present extraneous offense evidence during its case-in-chief that showed that the defendant had "molested" two other girls in his church office. The Court of Criminal Appeals held that it was "at least subject to reasonable disagreement whether the extraneous-offense evidence was admissible for the noncharacter-conformity purpose" to rebut the defendant's defensive theory that the complainant fabricated her allegations against him and to rebut the defensive theory that suggested the defendant, as a "real deal" and "genuine" pastor, would not engage in the type of conduct alleged in the indictment. *Id.* at 563, 558; *see De La Paz*, 279 S.W.3d at 345.

*De La Paz* and *Bass* both established that extraneous offense evidence may be admissible to rebut the defensive theory of fabrication. *De La Paz*, 279 S.W.3d at 350; *Bass*, 270 S.W.3d at 563. Appellant's conduct with E.I. when he placed his "crotch area" against her "crotch area" had logical relevance apart from character conformity; the evidence showed that PSEUAVI's allegations of indecency by grinding and other acts were less likely to be fabricated because Appellant had similar contact with E.I. in the same house under similar circumstances. Appellant's conduct with E.I. showed a similar motive, plan, opportunity, and intent to assault PSEUAVI. We cannot say that the trial court abused its discretion when it overruled Appellant's objections to the extraneous offense evidence. Appellant's first issue is overruled.

### B. Rosemary's Credibility

In his second issue, Appellant claims that the trial court erred when it allowed the prosecutor to question Rosemary about her knowledge of Appellant's prior convictions for sexual assault of two other minor children. Appellant's theory

was that Rosemary had coerced her children to make up the allegations against Appellant. On direct examination by Appellant, Rosemary testified that she did not think or suspect that Appellant would abuse her children. The State argued that it had the right to cross-examine Rosemary about her knowledge of Appellant's prior convictions for aggravated sexual assault of two minor children. The State claimed it had that right in order to correct the false impression that Rosemary presented in her direct testimony.

Appellant complained that the trial court should not have allowed the evidence for impeachment because it was inadmissible under Rules 403, 404(b), and 608 of the Texas Rules of Evidence. The trial court allowed the prosecutor to ask Rosemary whether she knew about Appellant's two prior aggravated sexual assault convictions against other minor children; she said that she did but that she did not believe that Appellant had committed the crimes underlying the prior convictions. Prior to the prosecutor's questions, the trial court gave a limiting instruction to the jury that it could only consider the evidence of prior convictions to evaluate Rosemary's credibility.

The court in *Rodriguez v. State*, 974 S.W.2d 364 (Tex. App.—Amarillo 1998, pet. ref'd), held that the trial court had the discretion to allow evidence of a prior assault because the defense had opened the door to the defendant's "nature" to commit the criminal activity for which defendant was charged but that it could not introduce evidence of a DWI conviction because that crime shared none of the elements inherent in the assaultive or aggressive behavior of sexual assault. *Id.* at 368–69. The rebuttal evidence on reputation, therefore, is limited to the scope of the criminal activity alleged or discussed (i.e., only evidence that fits through the opened door, not the entire door frame, is permissible). *Id.*

In this case, during direct examination by Appellant's counsel, Rosemary testified that she had no reason to suspect that Appellant would abuse her children.

7

That testimony opened the door and, therefore, put at issue her credibility about her lack of suspicion in light of her prior knowledge of Appellant's convictions for sexual assault offenses that he committed against other children. The trial court allowed the State to attempt to impeach Rosemary's credibility with the following question:

> However, while these events were occurring, while your daughter's attitude had changed towards the Defendant [Appellant], and while all this was going on you did have knowledge, didn't you, that the Defendant had been convicted of aggravated sexual assault of a child with two different child victims; is that right?

And Rosemary responded, "Yes." The prosecutor then asked, "So you knew that?" Rosemary responded, "Yes."

Under these facts, we cannot say that the trial court abused its discretion when it allowed the evidence for the limited purpose of impeachment of Rosemary's credibility. We overrule Appellant's final issue.

## V. *This Court's Ruling*

We affirm the judgments of the trial court.

MIKE WILLSON

JUSTICE

October 31, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.